MANUEL HAWAYEK, demandante y recurrido, *v.* AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO, demandada y recurrente.

*Número:* RE-86-280          *Resuelto:* 29 de marzo de 1989

*Ángel Luis Mayol,* abogado de la recurrente; *Alberto Santiago Villalonga,* de *Nachman & Fernández Sein,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

La Autoridad de las Fuentes Fluviales (Autoridad) —hoy Autoridad de Energía Eléctrica— recurre de la sentencia que le ordenó satisfacer los daños y perjuicios causados mientras hacía unos trabajos de excavación en la acera que discurría frente al edificio del demandante recurrido. Veamos los hechos que originaron el pleito.

El demandante recurrido Manuel Hawayek era propietario de un edificio localizado en la Ave. Ponce de León en Santurce, en el cual operaba un negocio de joyería ubicado en la primera planta del referido edificio. Los restantes pisos los mantenía alquilados a diversos arrendatarios como Sears Roebuck & Co., Álvaro Calderón Inc., American International Corp. y al Dr. Roberto Busó.

El 14 de junio de 1966 la Autoridad llevaba a cabo unos trabajos de excavación en la acera frente al referido edificio y rompió la tubería soterrada que allí se encontraba. Específicamente, se averió el tubo múltiple o *manifold* que suplía agua potable al sector y varias tomas individuales que suplían agua potable al edificio del demandante recurrido. Posteriormente, la demandada recurrente hizo reparaciones en el *manifold* y el demandante recurrido contrató los servicios de un plomero, Sr. Guillermo Febres, quien reparó las tomas individuales. Sin embargo, quedó un escape de agua en el *manifold,* por lo que la presión de agua potable del edificio bajó considerablemente afectando adversamente el sistema sanitario y el de agua potable.

El 24 de octubre de 1967 el señor Hawayek presentó demanda contra la Autoridad en la cual alegó que, como consecuencia de sus actuaciones negligentes, el sistema de agua del edificio se afectó de tal manera que los inquilinos cancela-

ron sus contratos de arrendamiento. Reclamó compensación por concepto de rentas que dejó de percibir, por los gastos incurridos en la reparación a las tuberías averiadas y por los contratiempos causados.

Tras varios incidentes procesales, la demandada recurrente contestó la demanda el 13 de agosto de 1968. Alegó como defensa especial la prescripción de la acción. El 23 de enero de 1976 se celebró vista, en la cual se presentó prueba por ambas partes para dilucidar la cuestión de la prescripción. El 20 de mayo de 1977 el tribunal resolvió que la demanda no estaba prescrita por haberse interrumpido el término prescriptivo.

En febrero de 1981 concluyó el desfile de prueba y, finalmente, el 10 de febrero de 1984 el tribunal emitió sentencia en la cual concluyó que la Autoridad fue negligente al destruir la tubería que suplía agua potable al edificio del demandante recurrido y al no restituirla adecuadamente. Determinó que el demandante recurrido tenía derecho a $12,000 por concepto del costo de las reparaciones necesarias en el *manifold*, $568.25 por concepto de un arreglo parcial hecho por el plomero señor Febres, $20,000 por concepto de los daños sufridos por la cancelación de contratos de arrendamiento, más las costas, gastos, intereses legales desde la presentación de la demanda, y $2,500 por concepto de honorarios de abogado. La demandada recurrente presentó solicitud de determinaciones de hecho adicionales y de una moción de reconsideración. Al efecto, se celebró una vista el 7 de diciembre de 1984 y las solicitudes fueron rechazadas el 16 de mayo de 1986.

En apoyo de su recurso, la Autoridad plantea que erró el tribunal al concluir que la presente acción no estaba prescrita; asimismo, que erró al conceder las partidas siguientes: $12,000 por la reparación del *manifold*, $568.25 por concepto de pago al plomero por un arreglo parcial y $20,000 por los daños sufridos por la cancelación de los contratos de arren-

damiento; que erró al imponerle a la demandada recurrente el pago de intereses legales desde la presentación de la demanda, porque conforme a la Regla 44.3(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III, éstas sólo aplican a causas de acción que surjan con posterioridad al 26 de mayo de 1967, y que erró el tribunal al imponer $2,500 por concepto de honorarios de abogado, pues el historial del caso demuestra que la demandada recurrente no fue temeraria.

I

Consideraremos en primer lugar el planteamiento sobre prescripción de la acción.

Los hechos que dieron lugar al presente pleito ocurrieron el 14 de junio de 1966. La demanda se presentó el 24 de octubre de 1967, dieciséis (16) meses después. El demandante recurrido alegó que había interrumpido el término prescriptivo mediante cartas de 12 de julio de 1966 y de 20 de noviembre de 1966 dirigidas al entonces Director Ejecutivo de la Autoridad, señor Urrutia, y mediante carta de 15 de diciembre de 1966 enviada al señor Castro Martínez, empleado de la demandada recurrente. También alegó que el término prescriptivo se había interrumpido mediante conversaciones con el señor Castro Martínez y con el licenciado Lube, Asesor Legal de la Autoridad durante 1966 y 1967.

En la vista celebrada para considerar la defensa especial de prescripción, la parte demandante recurrida presentó prueba testifical consistente de los testimonios del Sr. Manuel Hawayek y del Sr. Félix Vega, y prueba documental consistente de copias de las cartas de 20 de noviembre y de 15 de diciembre de 1966. La parte demandada recurrente presentó prueba testifical consistente de los testimonios del señor Castro Martínez y de la Sra. María Teresa Ocasio, oficinista de la Autoridad, y prueba documental consistente de una hoja de trámite, una hoja de ruta y una carta de 12 de julio de 1966. Mediante Resolución de 20 de mayo de 1977, de la cual

no se acudió ante nos, el tribunal resolvió que la demanda no estaba prescrita.

El foro de instancia concluyó que las conversaciones del señor Hawayek con el licenciado Lube ocurrieron en ocasiones de reuniones sociales y que las mismas fueron de carácter informal, por lo que no dieron fundamento a una interrupción del término prescriptivo. Señaló el tribunal que en agosto de 1966 el señor Hawayek sostuvo conversaciones para realizar un convenio con el señor Castro, por lo que de contarse el término de un año a partir de esa fecha la reclamación estaría prescrita.

En lo referente a la carta de 12 de julio de 1966, quedó establecido que se envió y que fue recibida por la Autoridad, interrumpiendo así la prescripción y dando paso a un nuevo período prescriptivo que finalizó el 12 de julio de 1967, por lo que la demanda presentada en octubre de 1967 estaría prescrita.

La controversia se centró en determinar si las cartas de 20 de noviembre de 1966 y de 15 de diciembre de 1966 tuvieron el efecto de interrumpir la prescripción. El foro de instancia concluyó que esas cartas interrumpieron el período prescriptivo y que, por lo tanto, la acción no estaba prescrita.

La reclamación extrajudical hecha por medio de una carta interrumpe la prescripción de la acción si la misma llega a su destino. *Díaz de Diana v. A.J.A.S. Ins. Co.*, 110 D.P.R. 471 (1980). El interrumpir la prescripción de la acción tiene como efecto que el término prescriptivo comience a contarse nuevamente por entero. H.M. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. 2, Cap. X, pág. 568. Por lo tanto, si la carta de 20 de noviembre de 1966 interrumpió la prescripción, comenzaría a contarse un nuevo período que finalizaría el 20 de noviembre de 1967, por lo que la demanda no estaría prescrita.

La presentación de copia de las cartas, unida al testimonio del demandante recurrido a los efectos de que él envió las cartas de 20 de noviembre y de 16 de diciembre de 1966 a los funcionarios de la Autoridad, estableció la presunción controvertible de que la carta llegó a su destino. Regla 16(24) de Evidencia, 32 L.P.R.A. Ap. IV.

■ Una vez establecido el hecho básico de que las cartas se enviaron, correspondía a la parte demandada recurrente presentar prueba para persuadir al juzgador de la no existencia del hecho presumido: que las cartas llegaron a su destino. En ese sentido, señala el profesor Chiesa:

Así, pues, la parte contra quien va dirigida la presunción no sólo tiene la obligación de presentar evidencia —so pena de que el juzgador quede obligado a inferir el hecho presumido— sino que, además, tiene el peso de la prueba para persuadir al juzgador de que no ocurrió el hecho presumido.

. . . . . . . .

Si el demandado presenta prueba en apoyo de que no ocurrió el hecho presumido, entonces el juzgador resolverá la cuestión a la luz de toda la evidencia, pero teniendo presente que el peso de la prueba lo tiene la parte que pretende establecer que el hecho presumido no ocurrió. E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1983, Vol. I, pág. 44.

La demandada recurrente presentó prueba testifical que consistió en la declaración del señor Castro Martínez de que no había recibido correspondencia del señor Hawayek y la declaración de la oficinista María Teresa Ocasio de que no se recibió correspondencia dirigida al señor Urrutia en noviembre de 1966 y que tampoco se recibió carta alguna dirigida al señor Castro en diciembre de 1966. Al juzgador de los hechos no le persuadió el testimonio de dichos testigos. Al evaluar la evidencia que tuvo ante sí le dio entero crédito a las declaraciones del demandante recurrido y concluyó que las cartas habían interrumpido el término prescriptivo. Citamos de la

resolución emitida el 20 de mayo de 1977 por el juez de instancia:

> Dado el interés demostrado por la parte demandante durante todo el proceso desde que ocurrió el accidente que motivó la demanda, las cartas escritas a la Autoridad de las Fuentes Fluviales con anterioridad a las de noviembre de 1966, las conversaciones con el Lcdo. Lube, aunque en un plano de amistad y las conversaciones con el señor Castro Martínez donde se llegó a un entendido entre el señor Hawayek y el señor Castro Martínez, le damos crédito al testimonio del señor Hawayek en el sentido de que las cartas de noviembre de 1966 y 15 de diciembre del mismo año fueron enviadas a la parte demandada. Apéndice, pág. 22.

En *Díaz de Diana v. A.J.A.S. Ins. Co.*, supra, resolvimos que el foro de instancia erró en la apreciación de la prueba presentada por el demandado para rebatir la presunción de que la carta llegó a su destino. La situación allí era distinguible a la que tenemos ante nuestra consideración. Allí la prueba era de naturaleza documental, lo que nos colocó en la misma situación del tribunal de instancia y nos permitió hacer nuestra propia determinación de que la carta no se recibió por la parte demandada.

Aquí se trata básicamente de la credibilidad que el juzgador dio a los testigos y, según señaláramos en *Ortiz v. Cruz Pabón*, 103 D.P.R. 939, 947 (1975): "'La verdad es que el testigo debe ser oído, y visto, interrogado y mirado.'" No hay fundamento en los autos que nos mueva a alterar la conclusión del tribunal de instancia, ya que la apreciación que el tribunal hizo de la prueba no denota que haya actuado con parcialidad. Por lo tanto, no erró al concluir que la demanda no estaba prescrita.

## II

En el primer, segundo y tercer señalamiento de error, el recurrente alega que erró el tribunal al conceder $12,000

para reparar el *manifold*, $568.25 por concepto de pago al plomero contratado por el demandante recurrido y $20,000 por los daños causados por la cancelación de los contratos de arrendamiento.

Un examen minucioso de la transcripción de la prueba desfilada ante el foro de instancia, aprobada y certificada el 3 de diciembre de 1986, nos mueve a concluir que erró el tribunal al conceder $12,000 por la reparación del *manifold* y que no erró al conceder $568.25 por el arreglo parcial de la tubería y $20,000 por los daños ocasionados por la cancelación de los contratos.

En lo referente al *manifold*, la prueba demostró que dicho tubo pertenece a la Autoridad de Acueductos y Alcantarillados (A.A.A.) y que fue reparado por funcionarios de esa agencia. El propio señor Hawayek, en el contrainterrogatorio hecho por el abogado de la demandada recurrente, confirmó que la A.A.A. hizo las reparaciones al *manifold*.

En síntesis, el señor Hawayek declaró que para agosto de 1966 hizo una reclamación ante la A.A.A. en la que solicitaba que se reparara el *manifold* y, en efecto, las brigadas de la A.A.A. lo repararon.

Igualmente, en el contrainterrogatorio hecho al plomero señor Febres, éste respondió que no intervino con el *manifold*, ya que la reparación de este tubo es responsabilidad de la A.A.A. Explicó que él no podía intervenir con el *manifold* porque por esa tubería discurre la línea de agua que sirve a las acometidas. Para trabajar en él es necesario cerrar la línea y eso sólo puede hacerlo la A.A.A., ya que el *manifold* le pertenece a ellos y es su responsabilidad reparar el mismo.

El Ing. Carlos Irizarry, de la A.A.A., en el interrogatorio directo hecho por el abogado de la demandada recurrente, confirmó que en efecto a la A.A.A. le corresponde reparar las averías en el *manifold*. Declaró que originalmente la instalación de servicio de agua y de alcantarillados que hubiera

hasta los límites de la propiedad pertenecía a la A.A.A. Posteriormente surgieron inconvenientes, ya que los abonados demandaban a la A.A.A. por los daños que sufrían cuando el personal de dicha agencia arreglaba las tuberías. Ante esta situación, la A.A.A. adoptó la norma de asumir la responsabilidad del servicio desde la tubería matriz hasta el contador, por lo que del contador en adelante es responsabilidad del abonado. De esta manera, cualquier avería que ocurra del contador hacia la línea matriz le corresponde repararla a la A.A.A.

Ciertamente erró el foro de instancia al conceder $12,000 al señor Hawayek para reparar el *manifold* cuando la prueba sostuvo que dicho tubo pertenece a la A.A.A. y fue reparado por la propia agencia, y que el señor Hawayek no incurrió en dichos gastos de reparación.

En lo referente a la concesión de $568.25 por concepto del pago al plomero por una reparación parcial, no erró el tribunal de instancia. Las declaraciones del señor Hawayek, del señor Febres (plomero) y del propio ingeniero de la Autoridad establecieron que estas tuberías fueron reparadas por el plomero contratado por el demandante recurrido.

En lo referente a la concesión de $20,000 por los daños ocasionados por la cancelación de los contratos de arrendamiento, no erró el tribunal en su determinación. El Ing. Carlos Irizarry, de la A.A.A., traído al pleito como testigo de la parte demandada recurrente, declaró que la avería que sufrió la tubería pudo afectar la presión de agua en el edificio del demandante recurrido. A su vez, quedó probado que los inquilinos del edificio enfrentaban problemas con el servicio de agua potable y con los servicios sanitarios en sus respectivas oficinas. Aunque éste no fue el factor determinante para que se mudaran del edificio, en efecto contribuyó al tomar su decisión.

■ El tribunal de instancia valorizó en $20,000 los daños ocasionados al señor Hawayek. Un examen del expediente del caso demuestra que dicha valorización no es errónea ni exagerada, por lo que no alteraremos el monto de la indemnización concedida. *Rodríguez Cancel v. A.E.E.*, 116 D.P.R. 443 (1985); *Valldejuli Rodríguez v. A.A.A.*, 99 D.P.R. 917, 924 (1971); *Santaella Negrón v. Licari*, 83 D.P.R. 887 (1961); *Goose v. Hilton Hotels*, 79 D.P.R. 523 (1956); *Prado v. Quiñones*, 78 D.P.R. 322, 338 (1955).

### III

Alega el recurrente en su cuarto señalamiento de error que erró el tribunal de instancia al conceder el pago de intereses desde la presentación de la demanda, ya que a tenor con la Regla 44.3(b) de Procedimiento Civil, *supra*, éstos sólo son aplicables a las causas de acción que hayan surgido con posterioridad al 26 de mayo de 1967. Le asiste la razón.

La imposición de intereses por temeridad fue producto de una enmienda hecha por la Ley Núm. 68 de 26 de mayo de 1967 a la entonces vigente Regla 44.4 de Procedimiento Civil de 1958 (32 L.P.R.A. Ap. II). Mediante dicha enmienda se le añadió el inciso (e) y expresamente se dispuso que el mismo sólo sería aplicable a las causas de acción que surgieran con posterioridad a la fecha de su aprobación, 26 de mayo de 1967. Citamos el inciso (e) de la Regla 44.4:

Sección 1.— Se adiciona el párrafo (e) a la Regla 44.4 de la [sic] Reglas de Procedimiento Civil de 1958, que leerá como sigue:

"(e) El Tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés legal desde que haya surgido la causa de acción en todo caso de cobro de dinero y desde la radicación de la demanda, en casos de daños y perjuicios a computarse sobre la cuantía de la sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus agencias, las corporaciones públicas o los municipios de Puerto Rico, disponiéndose que las disposi-

ciones de esta ley solamente serán aplicables a las causas de acción que surgieren con posterioridad a la fecha de su aprobación.

Sección 2.— Esta ley entrará en vigor inmediatamente después de su aprobación.

*Aprobada en 26 de mayo de 1967.* (Escolio omitido.) 1967 Leyes de Puerto Rico 276–277.

■ Posteriormente, al adoptarse las Reglas de Procedimiento Civil de 1979, se estableció el mismo principio de la Regla 44.4(e) de 1958 en la Regla 44.3(b), *supra*, y se conservó el lenguaje que dispone que la aplicación de intereses por temeridad sólo será para aquellos casos en que la causa de acción hubiese surgido en fecha posterior al 26 de mayo de 1967.[1] Citamos la Regla 44.3(b) de Procedimiento Civil de 1979, *supra*:

(b) El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés legal desde que haya surgido la causa de acción en todo caso de cobro de dinero y desde la radicación de la demanda, en casos de daños y perjuicios, y hasta la fecha en que se dicte sentencia a computarse sobre la cuantía de la sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades o funcionarios en su carácter oficial. Las diposiciones de este inciso serán aplicables a las causas de acción que hayan surgido a partir del 26 de mayo de 1967.

El lenguaje de la ley es claro al disponer que se impondrán los intereses por temeridad en aquellas causas de ac-

---

[1] El comentario a la Regla 44.3(b) de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III) reafirma los términos de aplicabilidad de la ley:

"(c) El inciso (b) corresponde con la vigente Regla 44.4(e) que fue producto de una enmienda introducida en 1967 mediante la Ley Núm. 68 de 26 de mayo de 1967, la cual se hizo aplicable a las causas de acción que surgieran con posterioridad a la fecha de su probación. Con motivo de ello, la propuesta regla contiene una disposición a los efectos de que la aplicación de la misma será a partir de dicha fecha. Solamente se adiciona que el cómputo del interés legal por temeridad se hará hasta ·la fecha en que se dicte sentencia. *Roldán Medina* v. *Serra*, 105 D.P.R. 507 (1976)."

ción que surjan con posterioridad al 26 de mayo de 1967. En el caso de autos, los elementos constitutivos de la causa de acción que vienen a ser el daño, el acto negligente y el nexo de causalidad entre ellos ocurrieron el 14 de junio de 1966, es decir, con anterioridad al 26 de mayo de 1967. Por tal razón, no le aplican las disposiciones referentes a los intereses por temeridad. Erró el tribunal de instancia al imponerle el pago de los mismos.

Finalmente, alega el recurrente que erró el tribunal de instancia al imponerle el pago de honorarios de abogado. No tiene razón.

▮ Los honorarios de abogado proceden cuando el tribunal de instancia determina que la parte perdidosa actuó con temeridad. *Raoca Plumbing v. Trans World*, 114 D.P.R. 464 (1983); *Montañez Cruz v. Metropolitan Cons. Corp.*, 87 D.P.R. 38 (1962). En *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713 (1987), señalamos que la acción que hace necesario un pleito que se pudo evitar o la indebida prolongación del mismo es conducta que amerita la imposición de honorarios de abogado.

Esa precisamente es la situación ante nos. La parte demandante recurrida llevó a cabo varios intentos para llegar a un acuerdo, el cual no se pudo lograr por la falta de atención de la Autoridad a sus reclamos. Igualmente, una vez iniciado el pleito, la Autoridad fue persistente en la presentación de mociones de prórrogas y suspensiones que prolongaron innecesariamente el pleito.

Por los fundamentos expuestos, *se modificará la sentencia del tribunal de instancia para eliminar la concesión de $12,000 para reparar el manifold y el pago de intereses por temeridad. Así modificada, se confirmará.*

El Juez Presidente Señor Pons Núñez y los Jueces Asociados Señor Negrón García y Señora Naveira de Rodón no intervinieron.