Segarra Olivero, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Browning Ferries Industries of Ponce, Inc., en lo sucesivo BFI, nos solicita la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, mediante la cual se declaró con lugar la demanda sobre daños y perjuicios instada por los demandantes-apelados de epígrafe.
BFI señala que el tribunal apelado erró:
" ... al no desestimar la demanda por prescripción.

*917
.al permitir el testimonio pericial de los doctores Abreu y Gerena sin que la parte demandante hubiera cumplido con los requisitos de la Regla 23.1 (c) de Procedimiento Civil.

. al imponer a la parte demandada el pago de honorarios de abogado e intereses sobre la sentencia al tipo legal a partir de la radicación de la demanda.

.en la evaluación de los daños de la parte demandante."

Por las razones que exponemos más adelante, modificamos la sentencia recurrida a los únicos efectos de reducir la cuantía otorgada al Sr. Cruz Costas Cabrera por concepto de angustias mentales y daños morales. Así modificada, se confirma.
I
El 7 de julio de 1995 Cruz Delgado Meléndez, Cruz Manuel Costas Cabrera y la sociedad legal de gananciales compuesta por ambos, en lo sucesivo los apelados, presentaron una demanda contra Browning Ferries Industries of Puerto Rico, Inc. y la Compañía de Seguros X por los daños y perjuicios sufridos como consecuencia de un accidente automovilístico ocurrido el 18 de julio de 1994. En esta demanda se alegó, en síntesis, que:

"El día 18 de julio de 1994, alrededor de las ocho y media de la mañana, la demandante Cruz Delgado Meléndez, quien conducía el automóvil de su esposo, marca Dodge Caravan, modelo 1984, por la carretera núm. 1, en Juana Díaz, se encontraba detenida frente a la intersección con la carretera 572, entrada al Barrio Galicia de dicho municipio para proceder a dar un viraje hacia su izquierda, cuando es impactada por la parte trasera de su vehículo por un camión de recogido de basura de la compañía demandada".

El 29 de agosto de 1995 BFI presentó una moción solicitando prórroga para alegar, en la que sostuvo, entre otras cosas, que había sido incorrectamente denominada en la demanda como Browning Ferries Industries of Puerto Rico, Inc.
El 23 de octubre de 1995, BFI presentó su contestación a la demanda en la que expuso que no se sometía a la jurisdicción del Tribunal porque no había sido emplazada debidamente; negó esencialmente las alegaciones de la demanda, levantó como defensas afirmativas que la demanda en su contra estaba prescrita, que los daños reclamados son exagerados y que el accidente se debió a la negligencia total y/o concurrente de la propia parte demandante. Al día siguiente, BFI le envió un extenso interrogatorio a los apelados.
Posteriormente, los apelados solicitaron permiso para enmendar la demanda con el propósito de sustituir a la parte demandada Browning Ferries Industries of Puerto Rico, Inc. por Browning Ferries Industries of Ponce, Inc. 
BFI presentó, entonces, una moción de desestimación en la que alegó que la demanda estaba prescrita toda vez que la demanda original fue instada contra una compañía distinta con personalidad jurídica independiente, por lo que no interrumpió el término prescriptivo en su contra. Los apelados presentaron su oposición a la desestimación. Posteriormente, el 14 de marzo de 1996, el Tribunal de Primera Instancia emitió una resolución en la cual denegó la solicitud de desestimación. El tribunal concluyó, en lo pertinente, lo siguiente:
"El aquí co-demandado BFI, Inc. tuvo conocimiento dentro del término prescriptivo de la causa de acción pendiente cuando le fue diligenciado el emplazamiento y copia de la demanda y ha tenido la oportunidad de defenderse; tanto así, que contestó la demanda y comenzó con el descubrimiento de prueba. Este sabía que de no haber sido por un error, la demanda original se hubiese instado con su nombre correcto. La enmienda a la demanda a los efectos de corregir el nombre de dicho co-demandado se retrotrae a la fecha de la alegación original". El 14 de abril de 1997 se celebró el juicio en su fondo del caso de epígrafe. Antes de que éste diera inicio, BFI le anunció al tribunal que “aceptaba la negligencia del accidente ocurrido." Por los demandantes-apelados declararon Cruz Delgado Meléndez, Cruz Costas Cabrera, y los doctores Luis Gerena Quiles, fisiatra, y Alberto Abreu Rivera, neurocirujano.
*918 BFI objetó la admisibilidad de los testimonios de los médicos en lo referente a materia pericial y opiniones porque alegadamente los apelados no sometieron la información mínima requerida en la Regla 23.1 (c) de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 23. El tribunal a quo admitió los referidos testimonios.
Los apelantes no presentaron prueba testifical ni documental. Las partes estipularon el testimonio del Dr. Luis Cummings, anestesiólogo, a los efectos de que fue el médico que sometió a la demandante a un procedimiento de bloqueo epidural.
Los apelados presentaron la siguiente prueba documental, la cual fue aceptada por el tribunal: (1) récord médico de la co-demandante de la ACAA; (2) récord médico del fisiatra; (3) récord médico del neurocimjano.
El 14 de mayo de 1997 el Tribunal de Primera Instancia declaró con lugar la demanda y condenó a BFI a pagarle a Cruz Delgado Meléndez la suma de $50,000 por concepto de los daños físicos sufridos, $10,000 por concepto de los daños morales y angustias mentales; y $20,000 por los daños morales y angustias mentales sufridos por Cruz Costas Cabrera. El tribunal a quo impuso, además, una suma de $150 por concepto de honorarios de abogado, el pago de las costas del proceso y el pago de intereses al tipo legal vigente al momento de la radicación de la demanda.
El Tribunal de Primera Instancia declaró sin lugar una moción presentada por BFI en la cual solicitó determinaciones de hechos adicionales. Inconforme, BFI acude ante nos mediante el presente escrito de apelación. Con la aprobación de este Tribunal y de los apelados, BFI sometió una transcripción de la prueba oral presentada en el juicio en sustitución de la exposición narrativa de la prueba. Posteriormente, los apelados presentaron el alegato correspondiente. Nos encontramos en posición de resolver.
II
La adecuada adjudicación de la controversia de autos requiere que examinemos inicialmente si la demanda instada contra BFI está o no prescrita.
Sabido es que el término prescriptivo aplicable a las acciones por daños y perjuicios extracontractuales es de un (1) año, Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298, y que la prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial y por cualquier acto de reconocimiento de la deuda por el deudor, Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303. La mera interposición de la demanda interrumpe la prescripción, aunque no se haya emplazado al demandado. Durán Cepeda v. Morales Lebrón, 112 D.P.R. 623 (1982); Feliciano v. A.A.A., 93 D.P.R. 655 (1966).
Las Reglas 13.1 y 4.9 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 13.1 y 4.9, consagran el poder de los tribunales para enmendar las alegaciones y los emplazamientos y establece que el permiso para enmendar los mismos se concederá liberalmente, cuando la justicia así lo requiera.
Nuestro Tribunal Supremo en el caso de Colón Gandía v. Tribunal Superior, 93 D.P.R. 225 (1966), resolvió que ante un error cometido por inadvertencia en la designación de la empresa demandada, cuando surgía con claridad cuál verdaderamente era ésta, "[n]o procedía, por tanto, que se incluyera como parte nueva en el caso a una persona a quien realmente se había demandado, aunque lo fuera con un nombre erróneo y a la cual se había citado en la persona de su verdadero agente y representante para recibir emplazamientos o citaciones". Id., a la pág. 230. Expresó, además, nuestro más Alto Foro, que:

"Bajo el poder conferido por la Regla 4.9 antes citada, los tribunales, en el uso de su discreción, pueden ordenar que se enmiende un emplazamiento o citación a fin de ajustarlo a la realidad, cuando se trata de situaciones en que se ha consignado en forma inapropiada el nombre de la persona que realmente se desea demandar. Esas situaciones, se ha decidido, deben ser consideradas como meros errores técnicos especialmente si se ha emplazado en realidad a la persona que se tiene interés en demandar o su agente autorizado al respecto.

*919 Se ha decidido que siempre que la enmienda solicitada no tenga el efecto de sustituir o incluir partes nuevas al procedimiento que no han sido emplazadas y sobre los cuales el tribunal no haya adquirido jurisdicción, y cuando no haya duda alguna en cuanto a la intención del demandante respecto a la persona que se ha tenido interés en demandar, habiéndose emplazado efectivamente a dicho demandado o su agente autorizado al efecto, actúa correctamente un tribunal al permitir la enmienda para corregir el nombre de dicho demandado." Id., a las págs. 231-232. (Citas omitidas.)
La Regla 13.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 13.3, la cual regula lo relativo a la retroactividad de las enmiendas, establece que:
"Siempre que la reclamación o defensa expuesta en la alegación enmendada surgiere de la conducta, acto, omisión o evento expuesto en la alegación original, las enmiendas se retrotraerán a la fecha de la alegación original. Una enmienda para sustituir la parte contra la cual se reclama se retrotraerá a la fecha de la alegación original si, en adición a cumplirse con el requisito anterior, y dentro del término prescriptivo, la parte que se trae mediante enmienda (1) tuvo conocimiento de la causa de acción pendiente, de tal suerte que no resulta impedido de defenderse en los méritos, y (2) de no haber sido por un error en cuanto a la identidad del verdadero responsable, la acción se hubiera instituido originalmente en su contra."
La Regla 13.3 de nuestras Reglas de Procedimiento Civil, supra, corresponde a la Regla 15 (c) de las de Procedimiento Civil Federal. En Colón Gandía v. Tribunal Superior, supra, a la pág. 232, nuestro Tribunal Supremo cita con aprobación la interpretación del comentarista Moore en cuanto a las normas 

"La norma debe ser si, a base de un criterio objetivo, es razonable concluir que el demandante tenía en mente una persona o entidad en particular, meramente cometió un error en cuanto al nombre, y en realidad emplazó a la persona o entidad deseada; o si el demandante realmente intentó demandar y emplazar una persona diferente. Y este criterio debe tener aplicación aunque se solicite la enmienda después de transcurrido el término prescriptivo con relación a la persona o entidad inapropiadamente nombrada en el emplazamiento."

BFI sostiene que erró el tribunal sentenciador al permitir que se enmendara la demanda para incluirla como parte demandada en el pleito, toda vez que la reclamación incoada contra Browning Ferries Industries of Puerto Rico, Inc., no interrumpió el término prescriptivo para interponer la demanda en su contra, ya que se trata de corporaciones independientes. BFI alega, además, que la demanda en su contra se instó el 31 de octubre de 1997, fuera del término prescriptivo aplicable.
Por su parte, los apelados aducen que la demanda original fue presentada dentro del año de ocurrido el accidente y tuvo el efecto de interrumpir el término prescriptivo contra BFI, la cual fue incorrectamente denominada como Browning Ferries Industries of Puerto Rico, Inc. Señalan que BFI tuvo conocimiento de la reclamación desde el momento en que fue emplazada Browning Ferries Industries of P.R., Inc., toda vez que compareció mediante moción de prórroga, contestó la demanda y comenzó el procedimiento de descubrimiento de prueba.
Los apelados sostienen también que BFI es una subsidiaria de Browning Ferries Industries of Puerto Rico, Inc., que ambas empresas están representadas por el mismo abogado y que, incluso, el representante legal de éstas les indicó que no era necesario que diligenciaran nuevos emplazamientos con el nombre correcto de la compañía demandada. Por ello, argumentan que de conformidad con lo dispuesto en la Regla 13.3 de Procedimiento Civil, supra, el curso procesal correcto era la enmienda de la demanda a los únicos efectos de corregir el nombre de la empresa demandada y que se retrotrayera a la fecha de radicación de la demanda original. Para sustentar su posición, los apelados nos acompañaron copia de una "Moción de Prórroga para Alegar”, presentada ante el Tribunal de Primera Instancia el 29 de agosto de 1995, la cual lee, en lo pertinente, como sigue:

"Comparece la co-demandada BFI, Inc., incorrectamente denominada como Browning Ferries Industries of Puerto Rico, Inc., representado por los abogados que suscriben, y respetuosamente expone y solicita:

*920
1. Que en el caso de epígrafe la parte aquí compareciente ha sido notificada con un emplazamiento y copia de la demanda.

2. Que para contestar adecuadamente o defenderse de otra forma se hace necesario que se le conceda una prórroga no menor de treinta dias para realizar una investigación sobre los hechos alegados en la demanda... ”.

En la situación de autos los apelados presentaron la demanda el 7 de julio de 1995 contra Browning Ferries Industries of Puerto Rico, Inc., (BFI) y la Compañía de Seguros X. Los emplazamientos fueron diligenciados el 17 de agosto de 1995. Días después, BFI compareció al tribunal mediante la moción de prórroga antes transcrita, contestó la demanda y comenzó el descubrimiento de prueba. Posteriormente, el 31 de octubre de 1995, los apelados solicitaron permiso para enmendar la demanda para sustituir a Browning Ferries Industries of Puerto Rico, Inc. por Browning Ferries Industries of Ponce, Inc. Junto con dicha moción acompañaron la demanda enmendada con los correspondientes emplazamientos. Los hechos del presente caso indican claramente que la verdadera entidad contra la cual inicialmente se quiso reclamar fue Browning Ferries Industries of Ponce, Inc. y que se incurrió inadvertidamente en un error al designársele Browning Ferries Industries of Puerto Rico, Inc. El error en la designación de la empresa es claramente palpable, máxime si tomamos en consideración que ambas compañías tienen básicamente el mismo nombre corporativo, son empresas dedicadas al negocio de recogido de basura, y, como cuestión de hecho, comparten la misma representación legal.
En virtud de lo antes reseñado, es necesario que concluyamos que la enmienda a la demanda y al emplazamiento para incluir el nombre de la empresa demandada correctamente se retrotrae a la fecha de radicación y notificación de la demanda originalmente presentada contra Browning Ferries Industries of Puerto Rico, Inc., toda vez que BFI, Inc. tenía conocimiento de la radicación de la demanda desde sus inicios y de no haber sido por un error en cuanto a la identidad del verdadero responsable, la acción se hubiera instituido originalmente en su contra.
Recordemos que nuestro Tribunal Supremo favorece que los casos sean resueltos en los méritos. A esos efectos, ha expresado lo siguiente:
“[E]ste Tribunal hará todo lo que esté a su alcance para que los casos sean resueltos en los méritos y no por sutilezas legales de alegaciones y procedimientos “...hace tiempo los tribunales han abandonado la teoría de que impartir justicia constituye un juego. Los litigantes deben hacer lo mismo. Ninguna parte en un procedimiento tiene un interés adquirido en los errores gramaticales y de procedimiento incurridos por su adversario." Serra v. Autoridad de Transporte, 68 D.P.R. 626, 629-630 (1948), según citado en Reyes Castillo v. Cantera Ramos, Inc., _ D.P.R. _ (1996), 96 J.T.S. 9.
III
BFI, en su segundo señalamiento de error, sostiene que erró el tribunal recurrido al admitir el testimonio pericial de los doctores Abreu y Gerena, toda vez que los apelados no cumplieron con los requisitos establecidos en la Regla 23.1 (c) de Procedimiento Civil, supra. Por esta razón, BFI objetó la admisibilidad del testimonio de los mencionados doctores sobre hechos no relacionados con su conocimiento personal sobre el tratamiento brindado a la Sra. Cruz Delgado Meléndez. En su escrito de apelación BFI argumenta que el tribunal a quo estimó la cuantía de los daños físicos sufridos por la Sra. Cruz Delgado Meléndez basándose en el testimonio pericial de los referidos doctores.
Por su parte, los apelados señalan que desde el inicio del descubrimiento de prueba le enviaron a BFI copia de los récords médicos de los doctores que atendieron a la Sra. Cruz Delgado Meléndez a causa de la condición provocada por el accidente y le proveyeron la dirección de éstos. Los apelados exponen, además, que los médicos fueron anunciados como peritos de ocurrencia en el Informe sobre Conferencia con Antelación al Juicio y que, por tanto, BFI podía utilizar los mecanismos de descubrimiento de prueba para descubrir toda la información que fuese necesaria. Por último, alegan que los testimonios de los médicos en el juicio se limitaron al tratamiento, diagnóstico y condición de la Sra. Cruz Delgado Meléndez, según surgía de sus expedientes médicos.
La Regla 23.1 (c) de Procedimiento Civil, supra, que es la que específicamente se refiere al *921 descubrimiento de pmeba pericial, limita el descubrimiento de la misma a peritos que hayan sido consultados por la otra parte y que ésta intente presentar en el juicio, y a peritos que la otra parte ha contratado con anterioridad al pleito o en preparación para el juicio y el cual no habrá de ser llamado a testificar. Regla 23.1(c) (1) y (2), supra. El objetivo de esta Regla es permitir a una parte prepararse adecuadamente para contrainterrogar efectivamente a un perito y refutar su testimonio. Boitel Santana v. Cruz, _ D.P.R. _ (1992), 92 J.T.S. 7.
La jurisprudencia del Tribunal Supremo ha identificado tres clases de peritos: (1) peritos de ocurrencia, quienes de antemano han obtenido conocimiento extrajudicial de los hechos a través de observaciones directas o por participación en eventos subsiguientes pertinentes a la litigación; (2) peritos en general, que son los que no están relacionados con los hechos singulares en controversia; y (3) peritos intermedios que incluye a quienes, debido a los estudios específicos que han efectuado en previsión del futuro o durante el proceso, estuvieron familiarizados con los hechos particulares del caso. San Lorenzo Trad. Inc. v. Hernández, 114 D.P.R. 704 (1983).
Según hemos expresado, un perito de ocurrencia tiene conocimiento de los hechos por haberlos percibido. El perito de ocurrencia se distingue del testigo ordinario en que utiliza su entrenamiento especial al percibir los sucesos. Boitel Santana v. Cruz, supra. Ahora bien, como regla general, a los peritos de ocurrencia se les considera testigos ordinarios a todos los efectos. San Lorenzo Trad. Inc. v. Hernández, supra. Los peritos de ocurrencia están sujetos a descubrimiento de toda materia no privilegiada que sea pertinente a la controversia aunque se trate de una opinión. Boitel Santana v. Cruz, supra.
En el caso de autos, los doctores Abreu y Gerena eran peritos de ocurrencia. Su testimonio en corte giró en tomo al tratamiento que ellos le ofrecieron a la Sra. Cruz Delgado Meléndez como consecuencia del accidente, a su diagnóstico y a su condición. Dicha información surgía, en gran medida, de los récords médicos de ésta, los cuales estaban en poder de BFI. De todas maneras, BFI tenía a su disposición los mecanismos de descubrimiento de prueba para obtener la información que estimara pertinente y no los utilizó. De la transcripción de la pmeba que obra en nuestro expediente no surge que los doctores Gerena y Abreu hayan ofrecido opiniones periciales. Concluimos que el segundo error señalado por BFI no fue cometido.
rv
En su tercer señalamiento de error, BFI alega que erró el tribunal recurrido al imponer el pago de honorarios de abogado y el pago de intereses sobre la sentencia al tipo legal a partir de la radicación de la demanda. La cuestión relativa a la imposición de honorarios de abogado está regulada por la Regla 44 (d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44, la cual dispone que:

"En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda corresponda a tal conducta."

El concepto "temeridad" ha sido ampliamente definido por el Tribunal Supremo de Puerto Rico. En términos generales se considerará temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. Torres Ortiz v. E.L.A., _ D.P.R. _ (1994), 94 J.T.S. 100; Elba A.B.M. v. U.P.R., 125 D.P.R. 299 (1990); Hawayek v. A.F.F, 123 D.P.R. 526 (1989); Colondres Vélez v. Bayron Vélez, 114 D.P.R. 833 (1983). El propósito fundamental de la imposición de honorarios de abogado es penalizar o sancionar a aquellas partes que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obligan a otra parte a asumir y sufrir las molestias, gastos, trabajos y consecuencia de un litigio innecesario. Sharon Marie Miranda y otros v. E.L.A., _ D.P.R. _ (1994), 94 J.T.S. 152.
La determinación sobre si un litigante ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador. Fernández v. San Juan Cement Inc., 118 D.P.R. 713 (1987); Raoca Plumbing v. Trans World, 114 D.P.R. 464, 468 (1983). La partida de honorarios de abogado concedida no se variará en apelación, a menos que la misma sea excesiva, exigua o constituya un abuso de discreción. Ramírez Anglada v. Club Cala de Palmas, 123 D.P.R. 339 (1989). Le corresponde a la parte *922 recurrente demostrar la comisión, por el tribunal sentenciador, del abuso de discreción. CNA Casualty de P.R. v. Torres Díaz, _ D.P.R. _ (1996), 96 J.T.S. 85.
En el presente caso, la parte apelante no ha demostrado que el tribunal apelado abusó de su discreción en la imposición de honorarios de abogado. Por esa razón, rehusamos intervenir con dicha determinación.
Por otro lado, la Regla 44.3 (b) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44, establece claramente que el tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés legal desde que haya surgido la causa de acción en todo caso de cobro de dinero y desde la radicación de la demanda, en casos de daños y perjuicios, y hasta la fecha en que se dicte sentencia a computarse sobre la cuantía de la sentencia. Una vez que el tribunal ha hecho su determinación de que el litigante ha sido temerario, el tribunal tiene que imponer el pago del interés legal sobre la cuantía de la sentencia en casos de daños y perjuicios. Por tanto, actuó correctamente el tribunal a quo al así disponer.
V
El cuarto señalamiento de error cuestiona la valoración de los daños que hiciera el foro sentenciador en el presente caso.
Sabido es que la determinación de la existencia de daños, así como de su extensión y cuantía, es una determinación que es predominantemente de hechos. La función de estimación y valorización de daños descansa en el juicio discrecional, sereno, prudente y razonable del juzgador de instancia. Rosado Feliciano v. Supermercado Mr. Special, _ D.P.R. _ (1996), 96 J.T.S. 6, a la pág. 583. De ordinario, los tribunales de apelación no intervendremos con esa valorización, a menos que las cuantías concedidas sean ridiculamente bajas o exageradamente altas. Torres Solis v. A.E.E., _ D.P.R. _ (1994), 94 J.T.S. 89, a la pág. 12040; Rodríguez Cancel v. A.E.E., 116 D.P.R. 443, 451 (1985); Urrutia v. A.A.A., 103 D.P.R. 643 (1975).
La gestión judicial de estimación y valoración de daños es una difícil y angustiosa, ya que no existe un sistema mecánico que nos permita llegar a un resultado exacto en relación con el cual todas las partes estén satisfechas. García Pagán v. Shilery Caribbean, 122 D.P.R. 193, 212 (1988); Rodríguez v. A.E.E., supra; Urrutia v. A.A.A., supra. La existencia de un cierto grado de especulación no impide que el tribunal, a base de los hechos particulares del caso y la prueba presentada, pueda determinar una cuantía adecuada y razonable para compensarle al reclamante los daños sufridos. García Pagán v. Shiley Caribbean, supra, págs. 212-213.
Con este trasfondo doctrinal, examinemos si procede que modifiquemos las cuantías de daños concedidas por el foro sentenciador tomando en cuenta que tenemos ante nuestra consideración la transcripción de la pmeba oral vertida en el juicio en su fondo del caso.
De dicha transcripción se desprende que la Sra. Cruz Delgado Meléndez cuenta con 41 años de edad en la actualidad, tiene cinco hijos, cuatro de los cuales viven con ella y su esposo, es ama de casa, y al momento del accidente el menor de sus hijos tenía apenas dos años. Como consecuencia del accidente, la Sra. Cruz Delgado Meléndez se ha sentido y se siente muy mal físicamente pues ha perdido movimiento en el cuello; se ha sometido a alrededor de 45 terapias y su condición no ha mejorado; fue sometida a un procedimiento de bloqueo epidural que mejoró su condición por un tiempo pero que volvió a empeorarse; estuvo aproximadamente un (1) año tomando los medicamentos para el dolor que le recetaba el doctor pero dichos medicamentos la adormecían; su neurocirujano le ha indicado que probablemente se tiene que someter a una cirugía muy delicada; un estudio que se hizo reveló que tiene daño cervical y un disco herniado.
El testimonio ofrecido por la Sra. Cruz Delgado Meléndez reveló que antes del accidente era una mamá activa y dinámica; que ya no puede realizar las tareas del hogar que antes realizaba ni compartir con sus hijos de la manera que lo hacía antes; y que sus relaciones maritales con su esposo se han visto afectadas como consecuencia del accidente.
El Dr. Gerena, físiatra de Cruz Delgado Meléndez, declaró que la atendió alrededor de un mes luego *923 del accidente y le recomendó terapia física para el área cervical. El Dr. Gerena señaló que se le hizo un examen a la paciente que reveló que tenía una lesión de un disco central herniado a nivel C-3, C-4 y que tenía un sobrehueso (espuelón) a nivel C-5 y C-6. Explicó, además, que el espuelón es una calcificación en los huesos que ocurre por cambios degenerativos asociados con algún tipo de artritis y que no está relacionado con el accidente.
El Dr. Abreu, neurocirujano, testificó que atendió a Cmz Delgado Meléndez por primera vez el 4 de agosto de 1994 y que su diagnóstico inicial fue esguince del cuello; que la paciente tenía dolores en el cuello, y le recomendó que se sometiera a terapias. El Dr. Abreu manifestó que para el 23 de febrero de 1995 la paciente se había sometido a treinta (30) terapias y todavía se sentía fatal. Que la próxima vez que la paciente acudió a su oficina fue en marzo de 1996 y que en esa ocasión le recomendó que se hiciera un estudio conocido como MRI, por sus siglas en inglés; que dicho examen reveló que tenía una hernia a nivel C-5, C-6 y un canal estrecho en C-3, C-4, C-5, C-6, C-7, lo cual significa que tiene un disco herniado con estrechez del canal por donde pasa el cordón espinal. El Dr. Abreu continuó testificando que le recomendó más terapias a la paciente pero ésta continuó con el dolor en el cuello y en los brazos.
El Dr. Abreu manifestó que le había comentado a la paciente de la posibilidad de someterse a una cirugía conocida como disquectomía cervical anterior, la cual tiene unas probabilidades de 80 a 85% de minimizar las molestias de la paciente, y que también le había explicado los riesgos de la operación, los cuales son considerables, pues era una operación muy delicada.
El Dr. Abreu explicó en el contrainterrogatorio que el espuelón que tiene la paciente empeoró la condición de estenosis que padecía y la condición de disco herniado. También aclaró que el disco herniado surgió por el accidente, más no así el espuelón. Señaló que la paciente, antes del accidente, no tenía síntomas relacionados con el espuelón y que luego del mismo es que comenzó a sentir los síntomas relacionados con dicha condición. Por último, el Dr. Abreu sostuvo que había que presumir que el disco herniado (provocado por el accidente) desencadenó la presencia de los síntomas relacionados con el espuelón.
Un examen de los testimonios vertidos en el juicio nos permite concluir que las cuantías concedidas a la Sra. Cruz Delgado Meléndez por los daños físicos y las angustias mentales sufridos como consecuencia del accidente no son exageradamente altas y están sostenidas en la prueba presentada. Por ello, no intervendremos con la determinación que el juez sentenciador tomó a estos efectos.
Por otro lado, entendemos que la cuantía concedida al Sr. Cruz Costas Cabrera, esposo de la Sra. Cruz Delgado Meléndez, por concepto de las angustias mentales es exageradamente alta, habida cuenta que el Tribunal apelado le concedió el doble de la cuantía concedida a la perjudicada. Concluimos que el Sr. Cruz Costas ha sufrido angustias mentales debido al accidente sufrido por su esposa. No obstante, estimamos que la suma concedida es exageradamente alta y la modificamos para reducirla a $7,500.
Por los fundamentos anteriormente expuestos, se modifica la sentencia apelada a los únicos efectos de reducir la cuantía concedida al Sr. Cruz Costas Cabrera a $7,500 por los sufrimientos y angustias mentales. Así modificada, se confirma.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General