*1169 TEXTO COMPLETO DE LA SENTENCIA
Francisco Delgado De León, Diana Padró y la sociedad legal de gananciales por ellos compuesta, —los apelantes — , nos solicitan la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, mediante la cual se declaró sin lugar la demanda sobre daños y perjuicios que ellos instaron.
Por los fundamentos que más adelante exponemos, confirmamos la sentencia apelada.
I
El 20 de abril de 1991, Francisco Delgado De León (Delgado) sufrió un accidente cuando cayó dentro de una alcantarilla localizada dentro de un complejo residencial propiedad de San Juan Park Limited Partnership. El accidente ocurrió mientras Delgado trabajaba para un patrono asegurado. Recibió tratamiento en el Fondo del Seguro del Estado por siete (7) años, fue dado de alta y el 8 de agosto de 1998 se dictó la resolución final en su caso. El Fondo del Seguro del Estado optó por no ejercitar su derecho de subrogación. El 4 de septiembre de 1998, los apelantes instaron demanda en daños y perjuicios contra la Asociación de Condominos del Condominio San Juan Park y la compañía aseguradora Integrand Insurance Company. La alegación de negligencia expuesta por los apelantes en la demanda fue a los efectos de que "el roto o hueco en la alcantarilla fue creado por la falta de mantenimiento y descuido en el mantenimiento de los predios del Condominio San Juan Park". Integrand (en lo sucesivo la demandada) contestó la demanda, aceptó la ocurrencia del accidente en el estacionamiento del Condominio San Juan Park, el cual era propiedad de San Juan Park Limited Partnership, negó el resto de las alegaciones y admitió que existía una póliza de responsabilidad pública con un límite de $500,000.00.
Luego de numerosos trámites, el juicio en su fondo se celebró los días 12, 13 y 14 de junio de 2000. Por los apelantes declararon Delgado, su esposa Diana Padró, y dos peritos: Dr. Juan J. Félix, cirujano ortopeda, y el Dr. Ibzan Pérez, psiquiatra. Por la parte demandada declararon los peritos Luis Pío Sánchez Longo, neurólogo, y la Dra. Haydée Costas, psiquiatra. Además, testificó el Sr. Raúl Rodríguez Torres sobre las conversaciones que tuvo con Delgado durante el proceso de investigación (surveillance) que se le hiciera a éste. Las partes presentaron extensa prueba documental y un video del referido "surveillance" del que fue objeto Delgado. A solicitud del Foro a quo, ambas partes presentaron memoriales sobre los hechos que consideraron probados.
Luego de examinar la prueba documental y testifical, el 19 de diciembre de 2000, el Tribunal apelado declaró sin lugar la demanda y, en lo pertinente, estimó probados los siguientes hechos:

“1. El demandante Francisco Delgado De León (Delgado de aquí en adelante) es mayor de edad y reside en la Calle 8 N-/ del Barrio Ingenio en el Municipio de Toa Baja. Está casado con Diana Padró desde el 24 de 
*1170
diciembre de 1976 y han procreado dos hijos, con quince (15) y dieciséis (16) años de edad a esta fecha, respectivamente. Para la época del accidente, la familia residía en el Condominio Torres de San Juan localizado en la Ave. Chardón en Hato Rey.

2. Delgado trabajó por espacio de quince (15) años en el Municipio de San Juan ocupando varias posiciones hasta que fue suspendido por abandono de trabajo, no regresando a trabajar más en dicho municipio. Delgado aceptó la suspensión, por lo que no radicó litigio en los tribunales para impugnar la misma. Luego de ser suspendido, realizó trabajos como contratista independiente con el dueño de un pequeño centro comercial de apellido Stewart por espacio de dos a tres años. En algún momento anterior al accidente del 30 de abril de 1991, Delgado había dejado de realizar la referida tarea porque, según su propio testimonio, el trabajo estaba flojo.

3. Para la fecha del incidente, el 30 de abril de 1991, Delgado trabajaba para una empresa de nombre Metropolitan Tow Service donde había comenzado a trabajar apenas nueve (9) días con antelación al incidente. Lo hacía en calidad de empleado temporero haciéndole las vacaciones a un amigo que allí trabajaba. No existe prueba creíble alguna de que el trabajo de Delgado con su empleador tuviera carácter permanente ni que se le hubiese ofrecido la plaza y ni siquiera que hubiera una plaza disponible. La evidencia es clara a los efectos de que el trabajo en Metropolitan era el único empleo del demandante a la fecha del accidente.

4. Ese día, 30 de abril de 1991, Delgado fue en gestiones de trabajo al Condominio San Juan Park localizado en la Parada 24 en Santurce. Fue enviado allí a remolcar un automóvil privado con una grúa, propiedad de Metropolitan Tow Service. Cuando llegó, el automóvil estaba detenido en uno de los espacios provistos como estacionamiento del Condominio. Delgado procedió a bajarse de la grúa y a empujar el automóvil para sacarlo fuera del lugar donde éste estaba estacionado y colocarlo en el lugar donde iba a realizar el engariche. Una vez realizó esta operación, se montó en la grúa y procedió a colocar la parte posterior de la grúa frente a la parte frontal del vehículo en aras de remolcar el automóvil.

5. Cuando Delgado detuvo la grúa, lo hizo de manera tal que la puerta del chofer quedó encima de una alcantarilla tipo cruza calle. El demandante abrió la puerta y procedió a desmontarse de la grúa. Sacó su pierna izquierda hacia afuera y cuando colocó el pie en la alcantarilla, éste, así como su pierna izquierda se introdujeron dentro de un hueco en la alcantarilla a la que le faltaban dos de las rejillas.

6. El demandante testificó que llevaba de cinco (5) a seis (6) años conduciendo grúas y como dieciocho (18) años conduciendo automóviles. Es evidente, pues, que el demandante tuvo que haber realizado el movimiento típico y normal de bajarse de una grúa en infinidad de ocasiones antes del 30 de abril de 1991. De hecho, el demandante testificó que su costumbre cuando se baja de un automóvil es mirar donde va a colocar el pie. En el presente caso es obvio que el demandante no miró donde colocó su pie. Una mera inspección visual, del área donde el demandante eventualmente colocó el pie, le hubiese advertido de la existencia del hueco, lo que, a su vez, hubiese evitado, que el demandante cayese en el mismo. El demandante indicó que su concentración principal era hacer el enganche del automóvil y no dónde estaba colocando el pie.

7. El demandante intentó justificar su falta de diligencia alegando que por la posición en que estacionó la grúa, no podía ver la alcantarilla en el lugar específico donde colocó su pie. Su testimonio no es creíble, ya que no resulta lógico que al abrir la puerta de un vehículo una persona prudente y razonable no vea, ni intente ver, donde va a colocar su pie. Cuando se abre la puerta de un automóvil, el área donde una persona va a poner el pie para bajarse del automóvil queda expuesta a la vista de la persona. Es absurdo pensar que un conductor al bajarse de un automóvil va a colocar el pie, a manera de ejemplo, debajo del auto. De hecho, en este caso, Delgado admitió que se bajó normalmente y que no miró donde colocó el pie.

*1171
8. El demandante alega que la parte demandada fue negligente al tener una alcantarilla defectuosa a la que le faltaban dos de sus rejillas, lo que provocó que el demandante cayera en el hueco producido por la ausencia de las rejillas. Para probar su alegación, introdujo unas fotografías del área existente, las que fueron tomadas por la esposa del demandante tres días después de los hechos. No obstante, para probar que el demandado fue negligente, no basta presentar las aludidas fotografías que podrían tender a demostrar la condición el día del accidente. Para prevalecer, el demandante tiene que probar los elementos establecidos en el caso normativo de Cotto v. Consolidated, 116 D.P.R. 644 (1985), en el que se resolvió que el demandante viene obligado a probar que existe una condición de peligrosidad y que tal condición era del conocimiento de la parte demandante o que razonablemente debían haber sabido sobre tal condición.

9. La evidencia presentada por el demandante para probar los elementos de peligrosidad establecidos en el caso de Cotto, constituyó, primero, en el testimonio de éste de que cuando estaba en el lugar de los hechos oyó un comentario de que "(t)anto tiempo esa alcantarilla ahí rota y no la arreglan". Segundo, que en ese día el guardia de seguridad le dijo al demandante que demandara porque la alcantarilla llevaba dos meses rota y que él (el guardia) la había reportado. De su faz, ambas manifestaciones constituyen prueba de referencia. La representación legal de la parte demandada oportunamente presentó la correspondiente objeción a ambas declaraciones. El Tribunal permitió la declaración reservándose la decisión sobre la admisibilidad de las declaraciones y su valor probatorio para esta etapa. Entendemos que ambas declaraciones son inadmisibles.

10. Entendemos imprescindible señalar que durante el contra-interrogatorio de Delgado, éste, al menos en 20 ocasiones, utilizó la defensiva frase de "No recuerdo" o "No se" para contestar preguntas claves a su caso. Por ejemplo, no recordó los ingresos que reportó al Banco cuando financió un vehículo valorado en $14,000.00; no recordó cuánto pagaba de renta mientras vivió en Jardines de Caparra, un sistema de vivienda subsidiada en la que la renta se paga a base del ingreso, no recordó si después de su última hospitalización en Mepsi tuvo otras hospitalizaciones; no recordó tampoco cuánto recibía de cupones ni cuánto ganaba su esposa en una farmacia, como tampoco recordó si en su testimonio en una deposición había dicho que no podía trabajar por su condición física ni si había dicho que no había tenido otros accidentes. Tampoco recordó si la caída del 20 de mayo de 1991, fue producto de un resbalón porque estaba mojado ni cuando comenzó a recibir los beneficios del seguro social ni si lo habían multado mientras conducía un camión de su propiedad; tampoco sabía si su madre falleció de un infarto ni que le habían diagnosticado neuropatía. No supo recordar porqué no había informado que había hecho los trabajos, por lo que fue grabado durante la investigación concluida por la parte demandada. En suma, no nos merece credibilidad el testimonio de Delgado.

11. La esposa de Delgado Padró llegó al lugar de los hechos un tiempo después del accidente y mientras su esposo estaba en el lugar de los hechos. Su testimonio demuestra que a ella nadie le dijo nada sobre la alcantarilla.

[[Image here]]

50. En suma, la evidencia creíble arroja que el demandante no padece de un disco herniado. Se concluye además que cualquier lesión que Delgado hubiera tenido en su espalda no envuelve entrampamiento del nervio y que no hay radiculopatía. En vista de ello, este Tribunal determina que Delgado no está incapacitado para trabajar, por lo que no puede reclamar lucro cesante.

51. Sobre este asunto existe evidencia clara y contundente de que el demandante realiza desde hace algún tiempo trabajos de construcción. Un vídeo presentado en Corte así lo atestigua. En el referido vídeo se aprecia al demandante recogiendo con una pala ciertos escombros, haciendo el consabido movimiento en más de 100 ocasiones. Es justo indicar que no se trata de una actividad liviana, sino, todo lo contrario, requiere mucha fuerza y vigor. El movimiento de su tronco es cuando menos normal; incluso el demandante pudo realizar un brinco desde la plataforma de su camión al piso y viceversa sin dificultad alguna a una altura estimada en 
*1172
aproximadamente cuatro (4’) pies de altura. Otras tomas de vídeo de otros días demuestran que el demandante no tiene problemas físicos alguno con su espalda.

52. La justificación dada por el demandante y por su esposa, respectivamente, de porqué realizó esos trabajos, es cuando menos, increíble. Confrontado con el hecho de la preparación de una tarjeta de identificación que lee Pancho y Diana, el demandante se limitó a decir que puso Pancho en la tarjeta de presentación porque lo hizo con la intención de poner a su hermano representándolo. Cuando se le preguntó porqué entonces no puso del nombre de su hermano, contestó porque él es el esposo de Diana y porque su hermano hacía trabajos por otro sitios donde también tenía que poner su nombre. Resulta obvio que el demandante invirtió en la preparación de dicha tarjeta de presentación porque realiza trabajos de construcción.

53. Además resulta otra gran evasiva las contestaciones dadas por Padró a las preguntas relacionadas a la factura de $125.00 que le sometió al investigador. Padró indicó que había tomado la hoja de factura de una libreta cualquiera que tenía en la casa hace años. Una mera revisión de la factura advierte que se trata de un papel nuevo. También es revelador la ausencia del testimonio del hermano de Delgado y de sus hijos a los que Delgado tanta referencia hizo.

54. Otra evidencia que demuestra que el demandante realiza trabajos de construcción es la existencia de un vehículo de carga F-250. El demandante le admitió al investigador Raúl Rodríguez Torres que utilizó y usa dicho vehículo para realizar trabajos de construcción. Ese vehículo fue adquirido en el 1996. No es creíble el testimonio del demandante de que el vehículo fue adquirido solamente para ser utilizado en la eventualidad de una inundación para mover sus pertenencias a otro lugar. Además resulta interesante que Delgado fue multado mientras conducía el camión en el 998 y en el 1999.

55. Delgado admitió durante el contrainterrogatorio que ciertamente ha realizado trabajos adicionales a los grabados. La admisión del demandante de que ha realizado trabajos adicionales a los grabados es ciertamente una admisión, pero más que eso es una impugnación a su testimonio inicial de que no había realizado ningún trabajo luego del accidente de 1991. Su esposa Padró también quedó desmentida con dicha admisión, ya que ésta testificó que los trabajos que había realizado su esposo fueron los únicos que había realizado. Dicha admisión es también una impugnación al testimonio posterior del demandante vertido durante el juicio de que sólo había hecho los trabajos que aparecen grabados.

56. En suma, en cuanto a su habilidad para trabajar, el demandante dio tres versiones distintas: la primera, que luego del accidente del 1991, no había atrabajado más. Luego cuando aparecieron los vídeos dijo que sólo había hechos los trabajos grabados en dichos vídeos. Entonces bajo interrogatorio del abogado contrario, tuvo que admitir que era cierto que había hechos trabajos adicionales a los grabados. Dicho sea de paso, convenientemente, el demandante no recordó cuántos otros trabajos había realizado ni desde cuándo.

57. Entendemos que no pueden tomarse livianamente estas contradicciones y testimonio mendaz de Delgado y su esposa. Ambos conocían muy bien la necesidad de que este Tribunal concluyera que Delgado no había trabajado más en su vida, ya que con dicho testimonio su compensación sería significativamente mayor que sin la misma. Voluntariamente y bajo juramente testificaron un hecho falso. De no haber sido por las técnicas forenses de contrainterrogatorio y por la investigación realizada, Delgado y su esposa hubieran tenido éxito en su intento de engañar al Tribunal. Tal acto no puede quedar impune.

58. Otro asunto de extrema importancia al evaluar la credibilidad del demandante, es su omisión de notificarle a la parte demandante (sic) de los accidentes previos sufridos por aquél. Especialmente aquél que ocurrió en 1997, mientras conducía un vehículo de motor. Como resultado del accidente del 1997, el demandante radicó un pleito en el Tribunal Superior en el cual se le tomó una deposición. Cuando se le 
*1173
preguntó en esa deposición como se sentía de la condición derivada por el accidente del 1991, contestó que se sentía bastante bien. A renglón seguido añadió que como resultado del accidente del 1997, amanecía quejándose cómo a las tres de la mañana, que se le trancaba un hueso y el cuello le molestaba. En otro momento dado indicó que antes del accidente del 1997, no tenía dolores terribles de cabeza ni un dolor terrible en la mano que adquirió luego del accidente del 1997.

59. Otro asunto que este tribunal debe discutir es el asunto de la alegada precariedad económica de Delgado. En variadas ocasiones, a través de su testimonio, el demandante hizo referencia a su precaria situación económica derivada de su alegada incapacidad para trabajar resultante del accidente de 1991. El demandante quiso hacer creer al Tribunal que la razón por la cual realizó los trabajos grabados fue porque no tenía con que darle de comer a sus hijas.

60. No obstante, la evidencia arroja una conclusión distinta. Casi inmediatamente luego del accidente del 19, el demandante comenzó a recibir más dinero del que se ganaba en Metropolitan Tow Service. La situación mejoró, más aún cuando comenzó a recibir los beneficios del Seguro Social en algún momento en el año 1 en que sus ingresos alcanzaron la suma de $900.00 mensuales. Esta suma es muy superior a lo que recibía mientras trabajó 9 días en Metropolitan ($125.00 semanal) que proyectado mensualmente sería alrededor de $500.00.

61. Este Tribunal determina que la condición económica del demandante no es lo precaria que intentó hacer creer. Posee un automóvil que compró nuevo en el 1997 en alrededor de $14,000.00, por el que paga un préstamo de $284.00 mensuales. El demandante convenientemente olvidó la cantidad que reportó para que le aprobaran el referido préstamo. En un momento dado, tuvo dos automóviles y el camión F-250 que hemos mencionado. O sea, tres (3) automóviles. Posee teléfono celular y se fuma dos cajetillas de cigarrillo al día. Resulta patético el que el señor demandante haya dicho que no tiene dinero para comprarle un litro de leche a sus hijos, mas, sin embargo, tengo $5.00 diarios para comprar cigarrillos. El demandante dijo además que había recibido alrededor de $24,000.00 a través del Fondo del Seguro del Estado y cerca de $6,000.00 por motivo del pleito que radicó por el accidente del 1997. Si comparamos esos ingresos con el hecho de que el demandante no paga luz, ni agua ni renta, resulta obvio que el demandante, cuando menos, exagera cuando dice que no tiene dinero para comprarle comida a sus hijos. Además, Delgado, en un momento, dado, dejó de recibir los cupones. Cuando se le confrontó si la razón por la cual había dejado de recibir los cupones fue porque estaba trabajando, indicó que era porque su hija había dejado la escuela.

[[Image here]]
El Tribunal a quo concluyó que la prueba presentada por los apelantes para demostrar que la alcantarilla estaba rota desde hacía tiempo y que la parte demandada tenía conocimiento de ello, era prueba de referencia inadmisible. Luego de concluir lo anterior, dispuso lo siguiente:

“Excluida la única prueba traída por el demandante para probar que la condición era conocida por el demandado, es forzoso concluir que el demandante no probó que su accidente fuera ocasionado por la negligencia del demandado. No obstante, debemos dejar consignado que aun en el caso de que el demandante hubiera probado la negligencia del demandado, entendemos que su propia negligencia es tan abrumadora que absorbe la posible negligencia del demandado. ”

Los apelantes presentaron oportunamente una moción de determinaciones de hechos y conclusiones de derecho adicionales. El 19 de marzo de 2002, el Tribunal de Primera Instancia emitió una resolución que no varió sustancialmente la sentencia anterior y mediante la cual adoptó algunas de las determinaciones sugeridas por los apelantes. 
*1174 Inconforme, los apelantes acuden ante nos y formulan diez (10) señalamientos de error. Los apelantes presentaron un proyecto de exposición narrativa de la prueba, el cual fue estipulado por la parte apelada. Integrand presentó su alegato en oposición. Los apelantes replicaron e Integrand se opuso. Ordenamos al Tribunal de Primera Instancia que elevara ante nos los autos originales, los cuales hemos examinado. Nos encontramos en posición de resolver.
II
En el primer señalamiento de error, los apelantes plantean que el Tribunal apelado abdicó a su función de aquilatar la prueba presentada al suscribir íntegramente la relación de hechos probados presentada por la parte demandada en el proyecto de sentencia que le fue requerido.
El Canon II de los Cánones de Etica Judicial de Puerto Rico, 4 L.P.R.A. Ap. IV-A, C. II, establece lo siguiente:

“Para el cabal desempeño de sus funciones, el Juez debe ser laborioso, prudente, sereno, imparcial y cuidadoso en la interpretación de la ley; estar consagrado al estudio del Derecho y ser diligente en el empeño de descubrir los hechos esenciales de cada controversia.

En el cumplimiento de este deber, el Juez resolverá cada controversia a base de su propia evaluación de la prueba presentada. En cualquier asunto sometido a su consideración, podrá, cuando a su juicio lo requieran los fines de la justicia, solicitar de las partes proyectos de sentencias, resoluciones u órdenes. ”

De lo anterior se desprende que la práctica de solicitar proyectos de sentencia no es, de por sí, reprobable. La misma está sancionada por el Código de Etica Judicial, siempre y cuando la sentencia, orden, o cualquier otra providencia, esté basada en la evaluación propia y personal del juzgador. Lo que sería reprobable es que el juzgador delegue su función en uno de los litigantes, firmando "a ciegas" el proyecto de sentencia ante su consideración. Báez v. Cooper, 120 D.P.R. 145 (1987); Román v. Díaz, 113 D.P.R. 500 (1982).
Los apelantes alegan que la sentencia emitida por el Tribunal de Primera Instancia adolece de los defectos de parcialidad y es una identificación con las pretensiones de la parte demandada. Añaden que la sentencia representa una interpretación parcializada e incorrecta de los hechos que tuvo ante su consideración el Tribunal.
Nada hay ante nos que sustente las alegaciones de los apelantes. Examinado el expediente y, específicamente, la exposición estipulada de la prueba testifical, encontramos que los apelantes no presentaron la evidencia necesaria para establecer la negligencia de la parte demandada y que las determinaciones de hechos a las que arribó el Foro a quo están sostenidas por el efecto que le produjo los testimonios de Delgado y su esposa Diana Padró, los cuales no le merecieron crédito alguno al Tribunal apelado.
Aunque los apelantes imputan al Tribunal de Primera Instancia haber obrado movido por la parcialidad, no proporcionan los elementos de juicio que pondrían de manifiesto la aludida parcialidad. Ante esa situación, le debemos deferencia al Foro apelado en cuanto a las determinaciones de hechos se refiere. Los apelantes no nos ponen en condición de alterar, modificar o revocar las referidas determinaciones. Tampoco estamos ante una situación en la que el Tribunal apelado firmó a ciegas el proyecto de sentencia presentado por la parte demandada. No se cometió el error señalado.
III
Consideraremos, a continuación, el tercer señalamiento de error, el cual está dirigido a atacar la determinación del Tribunal a quo de: (a) desestimar la demanda sobre daños y perjuicios por faltar uno de los requisitos establecidos por nuestro Tribunal Supremo en el caso de Cotto v. C.M. Ins. Co., supra; y (b) de catalogar la prueba presentada para cumplir con dicho requisito como prueba de referencia inadmisible.
*1175 A
Expongamos, a continuación, el derecho aplicable a las acciones de daños y perjuicios.
El Artículo 1802 del Código Civil, 31 L.P.R.A. see. 5141, impone responsabilidad al que causa daño a otro, ya sea mediante acción u omisión en la que intervenga culpa o negligencia. Laureano Pérez v. Soto, 141 D.P.R. 77 (1996). La culpa o negligencia es la falta del debido cuidado, que a la vez consiste esencialmente en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. Ramos v. Carlo, 85 D.P.R. 353, 358 (1962). Para imponer responsabilidad civil al amparo del Artículo 1802, supra, es necesario que concurran tres requisitos o elementos, a saber: (1) que se establezca la realidad del daño sufrido; (2) que exista la correspondiente relación causal entre el daño y la acción u omisión de otra persona; y (3) que dicho acto u omisión sea culposo o negligente. Admor. F.S.E. v. Almacén Ramón Rosa, 151 D.P.R. _ (2000), 2000 JTS 122; Tormos Arroyo v. D.I.P., 140 D.P.R. 265 (1996); Elba A.B.M. v. U.P.R., 125 D.P.R. 294 (1990).
En Soc. de Gananciales v. González Padín, 117 D.P.R. 94, 106 (1986), nuestro Tribunal Supremo elaboró la siguiente norma sobre el concepto de responsabilidad extracontractual por omisión ilícita:
“En cuanto a la responsabilidad, en particular resultante de omisiones, de un análisis de las decisiones emitidas por este Tribunal a través de años, se desprende que los factores a considerarse son: primero, la existencia o inexistencia de 'un deber jurídico de actuar' por parte del alegado causante del daño, el incumplimiento del cual deber constituye precisamente la 'antijuridicidad' de que hablábamos anteriormente, y segundo, si de haberse realizado el acto omitido, se hubiese evitado el daño.” (Citas omitidas.)
Un elemento esencial de la responsabilidad por culpa o negligencia es el factor de la previsibilidad y el riesgo en el caso específico. Elba A.B.M. v. U.P.R., supra. El deber de cuidado incluye, tanto la obligación de anticipar, como la de evitar la ocurrencia de daños, cuya probabilidad es razonablemente previsible. Pero la regla de anticipar el riesgo no se limita a que el riesgo preciso o las consecuencias exactas arrostradas debieron ser previstas. Lo esencial es que se tenga el deber de prever en forma general consecuencias de determinada clase. Id.
Como hemos visto, el Tribunal a quo utilizó la normativa establecida en el caso de Cotto v. Consolidated, supra, para determinar si hubo negligencia en el caso de autos. Los apelantes cuestionan la aplicación de la norma establecida en el referido caso a la situación aquí planteada, puesto que el mismo versa sobre la responsabilidad de los establecimientos comerciales en casos de caídas de clientes y parroquianos. Los apelantes alegan que una alcantarilla de hierro no se rompe de un día para otro, por lo cual es lógico suponer que la misma llevaba un tiempo considerable deteriorándose y que la parte demandada no presentó prueba sobre las medidas de precaución tomadas en relación con el mantenimiento de sus predios ni de que hubiesen inspeccionado el lugar donde se encontraba la alcantarilla para percatarse de la existencia de la condición peligrosa. Señalan, además, que la demandada tampoco presentó evidencia de que hubiese tomado precauciones para evitar que personas se cayesen dentro del hueco formado en la alcantarilla, por la falta de dos rejillas, como por ejemplo, la colocación de algún letrero o aviso que anunciara el peligro.
En relación con la responsabilidad de los dueños de establecimientos comerciales, se ha establecido que éstos tienen el deber de mantener dichos establecimientos en condiciones de seguridad tales, que la persona inducida a penetrar en los mismos, no sufra ningún daño. Cotto v. C.M. Ins. Co., supra; Aponte Betancourt v. Meléndez, 87 D.P.R. 652 (1963); Santaella Negrón v. Licari, 83 D.P.R. 887 (1961); Goose v. Hilton Hotels, 79 D.P.R. 523 (1956). Este deber implica que el dueño u operador tiene el deber de ejercer un cuidado razonable para mantener la seguridad de las áreas accesibles al público, para que, de ese modo, se evite que sus clientes sufran algún daño. Colón González v. Kmart y otros, 154 D.P.R. _ (2001), 2001 JTS 98; Soc. de Gananciales v. González Padín, supra. Así, se ha impuesto responsabilidad al operador de un establecimiento comercial en *1176 situaciones que envuelven "condiciones peligrosas existentes dentro de los establecimientos correspondientes, las cuales eran de conocimiento de los propietarios o su conocimiento podía imputárseles a éstos". (Enfasis nuestro.) Cotto v. C.M. Ins. Co., supra, a la pág. 650, y los casos allí citados.
No obstante lo anterior, el dueño de un establecimiento no es un asegurador absoluto de la seguridad de los clientes de su negocio, y su deber sólo se extiende al ejercicio del cuidado razonable para su protección. Id. Por tanto, para que se le imponga responsabilidad al dueño del establecimiento comercial, el demandante tiene que probar que el dueño del establecimiento no ha ejercido el cuidado debido para que el local fuese seguro. Colón González v. Kmart y otros, supra. En otras palabras, el demandante tiene que probar que su daño se debió a la existencia de una condición peligrosa, y que esa condición fue la que con mayor probabilidad ocasionó el daño, y que la misma era conocida por el demandado, o que debió conocerla. Id.; Admor. F.S.E. v. Almacén Román Rosa, supra. Por su parte, le corresponde a los tribunales de primera instancia evaluar la prueba presentada y determinar en cada caso —por preponderancia de la prueba — , si existía una condición peligrosa que era conocida por el dueño del establecimiento. Cotto v. C.M. Ins. Co., supra. Entendemos que las normas establecidas en el caso de Cotto, supra, son aplicables al caso de autos, habida cuenta que la presente reclamación de daños y perjuicios está fundamentada en una caída causada por una condición peligrosa.
Como hemos visto, no hay controversia en cuanto a la existencia -de la condición peligrosa, a saber: la alcantarilla rota. No obstante, la existencia de dicha condición no le impone responsabilidad absoluta a la paite demandada.
Es necesario probar que la condición peligrosa "era conocida por el demandado, o que debió conocerla". Los apelantes presentaron, como evidencia de lo anterior, unas fotografías del lugar del accidente, las cuales fueron tomadas tres (3) días después del accidente y que demuestran que la alcantarilla estaba rota, y el testimonio del apelante en relación con diversos comentarios que le hicieron varias personas luego del accidente. Véase, determinación de hecho número 10. El Tribunal a quo concluyó que los apelantes no presentaron prueba demostrativa de este requisito, pues no fueron admitidos en evidencia los testimonios de terceras personas que alegadamente reflejaban que la alcantarilla estaba rota hacía algún tiempo y que eran indicativos de que la parte demandada debió haber tenido conocimiento de la existencia de la condición peligrosa.
En cuanto a este punto, los apelantes sostienen que los testimonios en cuestión eran admisibles, pues constituían una excepción a la regla de exclusión de pmeba de referencia, de conformidad con lo establecido en las Reglas 65 (A) y 65(B) de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 65.
B
Veamos, pues, las reglas evidenciarlas aplicables.
La pmeba de referencia es "[u]na declaración aparte de la que hace el declarante al testificar en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado", y declarante "es la persona que hace una declaración". Regla 60 de las Reglas de Evidencia, 32 L.P.R.A. Ap. IV.
La Regla 61, por su parte, dispone que "salvo que por ley se disponga otra cosa, no será admisible prueba de referencia, sino de conformidad con lo dispuesto en este capítulo". Esta norma general de exclusión de la pmeba de referencia está fundada en razones de falta de confiabílidad. Su inadmisibilidad está atada a los riesgos inherentes que presenta relativos a la narración, percepción, recuerdo del acontecimiento y sinceridad del declarante, por lo que se impone la obligación de considerar esta evidencia con cautela. Pueblo v. García Reyes, 113 D.P.R. 843, 853 (1983).
El Profesor Chiesa señala que la razón que motiva la regla general de exclusión de pmeba de referencia es *1177 la falta de confiabilidad de la misma y su dudoso valor probatorio, puesto que, de ordinario, una declaración que constituye prueba de referencia no tiene las garantías de confiabilidad que se produce mediante un testimonio en corte. Un testimonio en corte se hace bajo juramento, frente a la parte perjudicada por la declaración, frente al juzgador que ha de aquilatar su valor probatorio y está sujeta al contrainterrogatorio de las partes que tengan a bien hacerlo. E.L. Chiesa, Tratado de Derecho Probatorio (Reglas de Evidencia de Puerto Rico y Federales), República Dominicana, Publicaciones J.T.S., Tomo II, págs. 616 y 617. Señala, además, Chiesa, a la pág. 618, que:

“La presencia de algunos de estos factores o elementos de confiabilidad será tomada en cuenta en relación con si la declaración debe estar incluida en las reglas de excepción a la regla general de exclusión de prueba de referencia. La admisión de prueba de referencia está fundada, en gran medida, en elementos de confiabilidad, bien sea por razón de la naturaleza misma de la declaración o por la oportunidad de confrontación. Además, hay que contar con el elemento de necesidad, esto es, la no disponibilidad del declarante para testificar en la vista en que la declaración se ofrece como evidencia. ”

Sin embargo, dicha regla de exclusión no es absoluta. La ley contiene unas excepciones que se han establecido a base de razones circunstanciales .que abonan a la confiabilidad o probabilidad de veracidad, así como por razones de necesidad. Las excepciones a la regla de exclusión de prueba de referencia están contenidas en las Reglas 62 a 66 de Evidencia.
En el caso de autos, el Tribunal a quo analizó las manifestaciones de Delgado desde la perspectiva de la excepción establecida en la Regla 65(B) y concluyó que las mismas eran inadmisibles.
La Regla 65 (B) dispone como sigue:

“Es admisible como excepción a la regla de prueba de referencia, aunque el declarante esté disponible como testigo:

(B) Declaraciones espontáneas por excitación: Una declaración hecha mientras el declarante estaba bajo la influencia de excitación causada por la percepción de un acto, evento o condición y la declaración se refiere a dicho acto, evento o condición. ”

En Pueblo v. Cortés del Castillo, 86 D.P.R. 220, 229 (1962), el Tribunal Supremo expuso los tres factores que son necesarios para que pueda traerse la manifestación por excitación dentro de la excepción a la regla de prueba de referencia contenida en el inciso (B): (1) un evento suficientemente alarmante que le produzca una manifestación espontánea e irreflexiva; (2) falta de tiempo para inventar la manifestación; y (3) la manifestación debe referirse al evento que la causa. Véase, además, Pueblo v. García Reyes, 113 D.P.R. 843 (1983); Nieves López v. Rexach Bonet, 124 D.P.R. 427 (1989). El Profesor Chiesa señala la existencia de un cuarto elemento: el intervalo de tiempo transcurrido entre lo percibido y lo declarado debe ser tal que no le permita al declarante reflexionar sobre lo que ha percibido. Chiesa, supra, a la pág. 769.
La garantía circunstancial de veracidad de esta excepción yace en la ocurrencia de un evento o suceso de tal naturaleza o intensidad que genere una expresión espontánea. De ordinario, la combinación física y psicológica de estos factores paraliza temporalmente la facultad de reflexión, y ello reduce las probabilidades de fabricación de la declaración. Pueblo v. Cortés del Castillo, supra, a la pág. 229. Nuestro Tribunal Supremo dispuso, además, en el caso de Nieves López v. Bonet Rexach, supra, lo siguiente:
“Para determinar la admisibilidad de este tipo de manifestaciones, es menester escudriñar los hechos y circunstancias particulares de cada caso para detectar si el evento puede verdaderamente calificarse como alarmante o excitante (excited utterances). Esto presupone la presentación de prueba independiente para *1178 demostrar la espontaneidad de la manifestación. ” (Citas omitidas.) a la pág. 435.
Por otro lado, los apelantes mencionan escuetamente la Regla 65(A) para fundamentar la admisibilidad de las manifestaciones antes descritas.
La Regla 65(A) dispone que:

“Es admisible como excepción a la regla de prueba de referencia, aunque el. declarante esté disponible como testigo:

(A) Declaraciones contemporáneas a la percepción: Una declaración narrando, describiendo o explicando un acto, condición o evento percibido por el declarante y hecha mientras el declarante percibía dicho acto, condición o evento, o inmediatamente después. ”

En cuanto a esta excepción, el Profesor Ernesto Chiesa ha destacado lo siguiente:

“La inmediatez de la declaración es el elemento medular de esta regla. Ño hay tiempo significativo entre la percepción y la declaración, lo que se reduce a un mínimo la probabilidad de fabricación; lo mismo ocurre en cuanto a la probabilidad de olvido o faltado memoria. En esto consiste la confiabilidad de la declaración que justifica la excepción a la regla de exclusión de prueba de referencia.

Distinto al caso de declaraciones espontáneas por excitación, no se requiere que se trate de un evento excitante... La Regla tiene tres requisitos para su aplicación, a saber:

“(i) contemporaneidad entre el evento y la declaración;

(ii) percepción del evento por el declarante, y

(iii) la declaración describe o explica el evento percibido.” Véase, Chiesa, supra, a las págs. 762 y 763.
Básicamente, ambas excepciones tienen requisitos similares para su aplicación, pero en la 65(A) no se requiere que se presente prueba sobre el evento excitante o alarmante que provocó la declaración. Agréguese que en ambas se prescinde del requisito de no disponibilidad del declarante para testificar. Así, pues, las analizaremos conjuntamente.
El caso de López Nieves v. Rexach Bonet, supra, presenta una situación similar a la de autos en cuanto al tipo de declaración que se pretendía presentar en evidencia como excepción a la regla de exclusión de prueba de referencia. En dicho caso, hubo una colisión en cadena que involucraba tres carros pertenecientes al demandante Nieves López, la Sra. Carmen Figueroa, y el demandado Rexach Bonet, respectivamente. Nieves López adujo en su demanda que el accidente fue causado por Rexach Bonet, quien inició la colisión. Nieves López sostuvo en juicio lo siguiente: que luego de que su vehículo fue impactado por la parte trasera, se desmontó del mismo para tomar la información de los conductores involucrados; y que la señora que lo impactó —Carmen Figueroa — , le dio un número de teléfono y le dijo que "Yo le di a usted porque éste (refiriéndose a Rexach Bonet) me dio a mí primero". Esta manifestación fue objetada y sostenida por el tribunal sentenciador por constituir prueba de referencia. Nieves López acudió ante el Tribunal Supremo y señaló que el Tribunal a quo debió haber admitido las manifestaciones de la señora Carmen Figueroa a tenor con las disposiciones de la Regla 64(A)(5) y 65 (B) de las de Evidencia, supra.
Nuestro más Alto Foro resolvió que la manifestación de la señora Carmen Figueroa tampoco era admisible a la luz de la excepción de la Regla 65(B) de Evidencia, supra. En cuanto a este punto, sostuvo que:
*1179 “Reconocemos que, en muchas ocasiones, una colisión entre automóviles detenidos puede catalogarse como un evento excitante o alarmante susceptible de provocar declaraciones espontáneas. Claro está, ello depende de un sinnúmero de factores, entre los que se destacan la magnitud del impacto, el temperamento de los involucrados, el valor económico y daños de los automóviles implicados, las lesiones sufridas por algún pasajero dentro del automóvil, etc.
Aun así, la prueba del demandante Nieves López tampoco logró situar la declaración de Carmen Figueroa bajo esta excepción evidenciaría. A riesgo de especular, no podemos hacerlo nosotros. Recuérdese que no solicitó ni elevó la exposición narrativa de la prueba debidamente certificada. Ese era su deber. No lo hizo. Nada hay en qué avalar esa tesis. No hay indicio de que Carmen Figueroa estuviera excitada o actuara de manera irreflexiva al alegadamente manifestar que Rexach Bonet la había impactado. Sobre el particular, los autos originales y el récord limitado están totalmente huérfanos, incluso de la forma o manera en que hizo esta declaración. Los únicos indicadores objetivos tienden a demostrar lo contrario. La colisión no revistió la violencia generada por accidentes en que ha mediado exceso de velocidad. Los daños materiales no fueron significativos y ella no experimentó lesiones corporales. Si algo la prueba, de manera objetiva, permite razonablemente concluir es que no estaba excitada y perturbada. (Enfasis nuestro.) Id., a págs. 435 y 436.
De entrada, cabe preguntarse ¿por qué los apelantes no trataron de conseguir a los testigos que hicieron las manifestaciones sobre el tiempo que, alegadamente, llevaba rota la alcantarilla? No hay ni un ápice de prueba indicativa de gestiones que se hicieron para localizar a los testigos. Aunque reconocemos que las excepciones establecidas en la Regla 65 de Evidencia, supra, no requieren que se demuestre la no disponibilidad del testigo para declarar, las circunstancias particulares del caso de autos requerían que, al menos, los apelantes hubiesen desplegado algún tipo de diligencia razonable para localizar a los testigos en cuestión. No podemos perder de perspectiva, a poco que se examine la sentencia apelada en su totalidad, que el testimonio de Delgado fue impugnado en numerosas ocasiones en el juicio hasta el extremo que el Tribunal a quo específicamente señaló en la sentencia apelada que el mismo no le mereció credibilidad. 
Las manifestaciones en cuestión, según surgen de la determinación de hecho núm. 10 de la sentencia apelada y de la exposición narrativa de la prueba estipulada por las partes, fueron las siguientes: (1) el testimonio de Delgado de que cuando estaba en el lugar de los hechos oyó un comentario de que "(t)anto tiempo esa alcantarilla ahí rota y no la arreglan''-, y (2) que en ese día, el guardia de seguridad le dijo al demandante que demandara porque la alcantarilla llevaba dos meses rota y que él (el guardia) la había reportado.
Como surge claramente de lo anterior, nada se declaró en cuanto al alegado estado de excitación en el que se encontraban el guardia de seguridad y las otras personas que alegadamente mencionaron que la alcantarilla llevaba rota un tiempo considerable. Hubo ausencia total de prueba independiente para demostrar lo anterior. Los apelantes tampoco presentaron prueba indicativa de que las manifestaciones fueron espontáneas e irreflexivas, ni de cuánto tiempo transcurrió entre el accidente y las manifestaciones —para demostrar que no hubo tiempo para inventar tales manifestaciones y/o que las mismas fueron hechas mientras ocurría el accidente o inmediatamente después de ocurrido el mismo — , ni de que las personas que hicieron los comentarios hayan presenciado o percibido el accidente. De la prueba presentada se desprende únicamente que quién estaba excitado era el propio Delgado, quien fue la persona que sufrió el accidente. No obstante, como hemos visto, las reglas de evidencia requieren que se presente prueba sobre el grado de excitación de los declarantes, no del perjudicado.
Concluimos, pues, que no están presentes en el caso de autos las razones circunstanciales que abonan a la confiabilidad o probabilidad de veracidad de las manifestaciones que constituyen prueba de referencia. Ciertamente, las manifestaciones de terceras personas, las cuales no testificaron en el juicio y que ni siquiera fueron identificadas por los apelantes, no proveen las garantías de confiabilidad necesarias para ser admitidas en evidencia como excepción a la regla de exclusión de la prueba de referencia. Por ello, resolvemos que las *1180 manifestaciones en cuestión no eran admisibles, por no estar presentes los requisitos establecidos en la Regla 65 (A) y (B) de las de Evidencia, supra.
Resuelto lo anterior, concurrimos con la determinación del Tribunal apelado a los efectos de que:

“Excluida la única prueba traída por el demandante para probar que la condición era conocida por el demandado, es forzoso concluir que el demandante no probó que su accidente fuera ocasionado por la negligencia del demandado. ”

Actuó correctamente el Tribunal apelado al declarar sin lugar la demanda sobre daños y perjuicios instada por los apelantes. No cabe duda que los apelantes no presentaron prueba sobre uno de los elementos del Artículo 1802, supra, a saber: que la condición peligrosa era conocida o debió ser conocida por la parte demandada.
IV
En su segundo señalamiento de error, los apelantes sostienen que erró el Foro apelado al concluir que la caída de Delgado se debió únicamente a su negligencia. El Tribunal a quo añadió en su sentencia lo siguiente:

“No obstante, debemos dejar consignado que aun en el caso de que el demandante hubiera probado la negligencia del demandado, entendemos que su propia negligencia es tan abrumadora que absorbe la posible negligencia del demandado. ”

Entendemos que tales expresiones eran innecesarias y no constituyen la médula de la sentencia apelada, habida cuenta que ya el Tribunal a quo había concluido —correctamente— que los apelantes no presentaron prueba de todos los requisitos del Artículo 1802, supra. En otras palabras, lo discutido en la sección III de esta sentencia era suficiente para declarar sin lugar la demanda sobre daños y perjuicios. Nada más había que abundar. La expresión antes transcrita no fue el fundamento principal utilizado por el Foro apelado para declarar sin lugar la demanda.
Aclarado este punto, debemos señalar que el propio testimonio de Delgado demostró que éste fue negligente al bajarse de la grúa, y por ello, ocurrió el accidente.
Las determinaciones de hechos número cinco (5) a la siete (7) de la sentencia apelada describen la ocurrencia del accidente, según lo estimó probado el Tribunal de Primera Instancia. De las mismas se desprende que Delgado no miró donde colocó el pie al bajarse de la grúa porque su concentración principal era dónde iba a hacer el enganche del automóvil. La justificación ofrecida por Delgado de que no pudo ver el hueco en la alcantarilla por la posición en que estacionó la grúa fue catalogada por el Tribunal como absurda, porque no se puede concluir que "un conductor, al bajarse de un automóvil, va a colocar el pie, a manera de ejemplo, debajo del auto". Así, dispuso que una persona prudente y razonable, cuando se va a bajar de un vehículo o de una grúa, debe mirar dónde va a poner el pie. Una mera inspección visual del área donde Delgado eventualmente colocó su pie le hubiese advertido de la presencia del hueco y hubiese evitado la caída sufrida por éste.
Cabe reiterar nuevamente que, a través de toda la sentencia apelada, el Tribunal sentenciador enfatiza la falta de credibilidad y la mendacidad de Delgado. De conformidad con lo anterior y examinada la sentencia en su totalidad, no intervendremos con la determinación de que el accidente se debió a la negligencia de Delgado.
V
Por último, resta considerar el señalamiento de error relacionado con la imposición de honorarios de abogado.
*1181 La Regla 44.1(d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. IH, R. 44, dispone que:

“En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. ”

El concepto "temeridad" ha sido ampliamente definido por el Tribunal Supremo de Puerto Rico. En términos generales, se considerará temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. Blás v. Hosp. Guadalupe, 146 D.P.R. 267 (1998); Torres Ortiz v. E.L.A., 136 D.P.R. 556 (1994); Hawayek v. A.F.F., 123 D.P.R. 526 (1989); Colondrés Vélez v. Bayrón Vélez, 114 D.P.R. 833 (1983).
El propósito fundamental de la imposición de honorarios de abogado es penalizar o sancionar a aquellas partes que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovistas de fundamento, obligan a otra parte a asumir y sufrir las molestias, gastos, trabajos y consecuencia de un litigio innecesario. Jarra Const. v. Axxis Corp., 155 D.P.R. _ (2001), 2001 JTS 167; Miranda v. E.L.A., 137 D.P.R. 700 (1994). La determinación de si un litigante.ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador. Fernández v. San Juan Cement Inc., 118 D.P.R. 713 (1987); Raoca Plumbing v. Trans World, 114 D.P.R. 464, 468 (1983).
Dicha decisión no será revisada por este Tribunal, a menos que el tribunal sentenciador haya cometido un abuso de discreción, lo cual corresponde a la parte apelante demostrar. CNA Casualty de P.R. v. Torres Díaz, 141 D.P.R. 27 (1996).
En el caso de autos, los apelantes no nos han demostrado que el Tribunal de Primera Instancia abusó de su discreción al encontrarlos incursos en temeridad. No cabe duda que el Tribunal a quo no le concedió credibilidad alguna a los testimonios de Delgado y su esposa. La presentación en evidencia del video que se le tomó a Delgado como parte de una investigación ordenada por la parte demandada, dejó al descubierto la falta de credibilidad de Delgado. Sus reiteradas mentiras son suficientes para concluir que los apelantes actuaron de forma temeraria. No vamos a intervenir con dicha determinación.
Entendemos que de conformidad con el resultado al que llegamos hoy, es innecesario discutir los otros señalamientos de error levantados en el recurso ante nos.
VI
Por los fundamentos antes expuestos, confirmamos la sentencia apelada.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General
ESCOLIOS 2003 DTA 70
1. Dicha demanda fue enmendada para desistir de la acción contra la Asociación y en su lugar se demandó a San Juan Park Limited Partnership, quien fue emplazada por edictos y nunca contestó la demanda, por lo que se le anotó la rebeldía.
2. La adjudicación del presente recurso requiere únicamente que transcribamos los hechos que exponemos a continuación. Valga aclarar que la sentencia apelada contiene un total de noventa y cuatro (94) determinaciones de hechos.
3. El Tribunal a quo adoptó, además y en lo pertinente, las siguientes determinaciones de hechos, según fueron propuestas *1182 por los apelantes en su moción sobre determinaciones de hechos adicionales:

“6. Que el demandante permaneció en la posición en que cayó alrededor de hora y cuarto a hora y media, en lo que fue rescatado y sacado del vehículo (sic) por personal del equipo de rescate del Municipio de San Juan.

7. Que el accidente sufrido por Delgado ocurrió dentro de los predios de San Juan Limited Partnership. A la fecha del accidente, la Integrand Insurance Company había emitido una póliza de responsabilidad pública a favor de la (sic), por un valor de $500,000.00.

8. El accidente atrajo la atención de curiosos y vecinos del área que se congregaron alrededor del demandante, hacían comentarios y le pusieron una almohada. El demandante sufría de intensos dolores al extremo que daba gritos de dolor durante el tiempo que permaneció pillado. ”

4. Los apelantes sostuvieron que erró el Tribunal de Primera Instancia al:

“1. ...delegar su función de aquilatar la prueba en la apreciación manifiestamente errónea y prejuiciada de la parte demandada, aceptando verbatim en forma total las conclusiones de hechos propuestas por la parte demandada en su memorial, radicado con posterioridad al juicio, sin que el Tribunal ejerciera él su sagrado deber de aquilatación de prueba y que la sentencia refleje sus propias y objetivas conclusiones, por lo que, se impone un escrutinio riguroso de las conclusiones a que el Tribunal llegara, ya que representan en realidad las conclusiones propuestas por la parte demandada.

2. ...resolver como cuestión de hecho, que la caída de Erancisco Delgado De León se había debido, ciento por ciento a su propia negligencia.

3. ...resolver como cuestión de hecho que la parte demandante no había probado la negligencia de la parte demandada al mantener una condición peligrosa en los predios de San Juan Park Limited Partnership. Erró al no considerar prueba admisible y catalogarla como de referencia.

4. ...concluir que la segunda caída del Sr. Delgado De León, el 20 de mayo de 1991, no estaba relacionada con la primera caída sufrida por éste el 30 de abril.

5. ...resolver que la condición de depresión mayor que se le desarrolló al demandante, no se debió al accidente que sufrió el 30 de abril por éste, agravado por su caída del 20 de mayo.

6. ...resolver que el demandante no había quedado incapacitado para desempeñarse en un trabajo remunerado a pesar de su condición crónica de depresión mayor.

7. ...no declarar con lugar la demanda y satisfacer a la parte demandante sus daños económicos, físicos y morales, incluyendo su incapacidad mental y emocional.

8. ...resolver que la reclamación de la sociedad legal de gananciales estaba prescrita.

9. ...imponer honorarios de abogado al demandante Delgado De León.

10. ...no conceder honorarios e intereses a la parte demandante. ”

5. La Regla 64(A) enumera cinco circunstancias bajo las cuales se considera un declarante no disponible para declarar. Bajo la excepción establecida en la Regla 64(A)(5), se caracteriza al testigo no disponible a aquel "ausente de la vista si el proponente de su declaración ha desplegado diligencia para conseguir la comparecencia mediante citación del tribunal".
El Tribunal Supremo concluyó que el demandante no fue diligente ni hizo un esfuerzo razonable para lograr la presencia del testigo en juicio, por lo que determinó que no procedía la aplicación de la excepción establecida en la Regla 64(A)(5) de Evidencia, supra.
*1183 6. Las determinaciones de hechos aquí transcritas reflejan claramente que el Foro sentenciador no le dio crédito alguno al testimonio de Delgado. Véase, además, la determinación de hecho núm. 70. Valga mencionar que en el contrainterrogatorio al que fue sometido Delgado enjuicio, éste, a preguntas del Ledo. Marcos Valls, representante legal de la parte demandada, en cuanto a si era necesario creerle a él (Delgado) para poder tomar como cierto su testimonio respecto a las manifestaciones de terceras personas —tales como los médicos y el guardia de seguridad — , contestó tal interrogante en la afirmativa. Véase, pág. 25 de la exposición narrativa de la prueba estipulada por las partes.
Es norma reiterada en nuestra jurisdicción que un tribunal apelativo no intervendrá con la apreciación de la prueba realizada por el juzgador de primera instancia salvo que exista pasión, prejuicio, parcialidad o error manifiesto en la determinación de este último. Véanse, Regla 43.2 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 43; Mun. de Ponce v. A. C. et al., 153 D.P.R. _ (2000), 2001 JTS 3; Méndez v. Morales, 142 D.P.R. 26 (1996); Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987); Rodríguez Cancel v. A.E.E., 116 D.P.R. 443 (1985). Esta deferencia descansa en que el juzgador de los hechos, que oyó y vio declarar a los testigos y apreció su "demeanor", es quien está en la mejor posición para aquilatar la prueba testifical desfilada. Flores v. Soc. de Gananciales, 146 D.P.R. 45 (1998); López Vicil v. ITT Intermedia, Inc., 142 D.P.R. 857 (1997); Ortiz v. Cruz Pabón, 103 D.P.R. 939 (1975).