Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VI**

| | | |
|---|---|---|
| José D. Cotto de la Paz y María E. González Méndez<br><br>Recurridos<br><br>vs.<br><br>Sociedad Española de Auxilio Mutuo y Beneficencia de Puerto Rico; por sí y haciendo negocios como Auxilio Plan de Socios, Hospital Español Auxilio Mutuo de Puerto Rico, Inc., Dr. Armando Muñiz Camacho y otros<br><br>Peticionarios | TA2025CE00798 | ***CERTIORARI*** procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.: SJ2021CV05921<br><br>Sobre:<br><br>Impericia Medica |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de diciembre de 2025.

Comparece ante nos el Dr. Armando Muñiz Camacho (Dr. Muñiz Camacho o peticionario), quien nos solicita la revocación de la Resolución Interlocutoria emitida el 23 de septiembre de 2025,[1] por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario). Mediante el referido dictamen, el foro primario determinó que no procedía desestimar la causa de acción por prescripción.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración,

---

[1] Notificada el 24 de septiembre de 2025.

expedimos el auto de *Certiorari* y confirmamos el dictamen recurrido por los fundamentos que expondremos a continuación.

**I.**

El caso de autos tuvo su génesis el 14 de septiembre de 2021, cuando el señor Cotto de la Paz (Sr. Cotto de la Paz o recurrido) y la señora María Enid González Méndez (Sra. González Méndez) presentaron una acción de daños y perjuicios por impericia médica, en contra del Hospital Auxilio Mutuo y Beneficia de Puerto Rico (Hospital Auxilio Mutuo), el Dr. Muñiz Camacho, entre otros. En síntesis, alegaron que el Sr. Cotto de la Paz fue paciente del Dr. Muñiz Camacho en el periodo del 2010 hasta el 2015. Especificaron que, durante este tiempo, el peticionario le ordenó en cuatro (4) ocasiones al Sr. Cotto de la Paz que se hiciera la prueba sanguínea Prostate Specific Antigen (PSA). A pesar de haber arrojado resultados anómalos en las pruebas, no fue hasta el 21 de agosto de 2015, que el Dr. Muñiz Camacho lo refirió a un urólogo. Presuntamente, en ese momento se le informó al Sr. Cotto de la Paz, que esta prueba se hacía para detectar el cáncer en la próstata. Consecuentemente, el 22 de octubre de 2015, advino en conocimiento sobre su diagnostico de cáncer.  A raíz de ello, sufrió una serie de daños físicos, emocionales y morales, los cuales se lo atribuye a la negligencia del Dr. Muñiz Cotto.  Especificó que, los actos del peticionario impidieron que éste pudiera tratar el cáncer de próstata en etapas tempranas. A raíz de ello, sufre de incontinencia urinaria, problemas de erección y depresión.

Posteriormente, el 15 de noviembre de 2021, el Dr. Muñiz Camacho presentó su Contestación a Demanda, en la cual señaló que los daños sufridos por el Sr. Cotto de la Paz se deben a sus propios actos. Argumentó que el recurrido no asistía a sus evaluaciones anuales y tampoco le entregó los resultados de las pruebas PSA para su análisis.

Luego de varios tramites procesales, el 18 de septiembre de 2024, el Dr. Muñiz Camacho presentó una Segunda Moción Solicitando Desestimación por Prescripción. Arguyó que, en la Demanda no existen alegaciones dirigidas a establecer la interrupción del término prescriptivo. Señaló que, el recurso se presentó de manera tardía, toda vez que el recurrido tenía hasta el 22 de agosto de 2016, para presentar la causa de acción. Alegó que, no es hasta el 10 de octubre de 2019, que recibió la reclamación extrajudicial del Sr. Cotto de la Paz. Además, indicó que, el recurrido erró entregar de las reclamaciones extrajudiciales dirigidas a este en las Clínicas del Plan de Socios del Hospital Auxilio Mutuo. Razonó que mantenía una oficina privada, que de haberse desplegado una diligencia mínima, hubiera obtenido la dirección correcta.

Por su parte, el 20 de junio de 2025, el Sr. Cotto de la Paz presentó una Oposición a Desestimación por Prescripción Presentada por el Co-Demandado Armando Muñiz Camacho. Indicó que, el 22 de octubre de 2015, recibió los resultados de la biopsia correspondiente a su diagnóstico de cáncer de próstata. Por lo que, en base a la teoría cognoscitiva del daño, el termino prescriptivo de (1) año comenzó a transcurrir desde esa fecha. Consecuentemente, informó que este cursó una serie de reclamaciones extrajudiciales en las siguientes fechas: 14 de octubre de 2016, 12 de octubre de 2017, 10 de octubre de 2018, 10 de octubre de 2019 y 8 de octubre de 2020. Especificó que las cartas fueron entregadas en la Clínica de Socios del Hospital Auxilio Mutuo, lugar en donde el recurrido era atendido por el Dr. Muñiz Camacho, con la intención de interrumpir el término prescriptivo. Arguyó que, al entregar las cartas en el lugar de trabajo del peticionario, cumplió con el requisito de que la

notificación sea razonablemente calculada para llegar a su destinatario.

Conforme a ello, el 23 de septiembre de 2025, el TPI emitió la Resolución Interlocutoria, en la cual declaró No Ha Lugar la solicitud de desestimación presentada por el Dr. Muñiz Camacho. Concluyó que, el testimonio del Sr. Cotto de la Paz resultó insuficiente para establecer que, en efecto, las reclamaciones extrajudiciales fueron recibidas por el peticionario. Sin embargo, dado a que las misivas se entregaron en el lugar en donde el Dr. Muñiz Camacho ofrece sus servicios en beneficio de la institución, concluyó que opera la figura de solidaridad propia. Especificó que, el peticionario no era empleado del hospital, sino que gozaba de unos privilegios en la institución. Conforme la doctrina aplicable, el hospital es responsable vicariamente por aquellos médicos que no son empleados de la institución, pero que están disponibles para consultas de otros médicos. Además, el hospital es responsable por aquellos facultativos que ostentan privilegios en las instalaciones hospitalarias, si este le asignó el paciente al médico. Por lo que, al interrumpir el término en contra del Hospital Auxilio Mutuo, se interrumpió a su vez el término prescriptivo para el Dr. Muñiz Camacho.

Inconforme, el peticionario presentó una Moción de Reconsideración el 8 de octubre de 2025. Por medio de esta, negó que existiera una relación obrero-patronal con el Hospital Auxilio Mutuo. Insistió que, entre estos existe una solidaridad impropia, toda vez que el peticionario ostentaba un contrato de servicios a tiempo parcial en las clínicas externas, mientras mantenía su práctica privada.

Así las cosas, el 23 de octubre de 2025, el TPI emitió una Resolución Interlocutoria en la que declaró No Ha Lugar la solicitud de reconsideración presentada por el peticionario.

En desacuerdo, 21 de noviembre de 2025, el peticionario acudió ante este foro y señaló la comisión de los siguientes errores:

*1. Erró el TPI al determinar que el demandante interrumpió el término prescriptivo cuando no entregó las cartas de reclamación extrajudicial al Dr. Muñiz.*

*2. Erró el TPI al determinar aplicar la doctrina de "solidaridad propia" y el Artículo 1803 del Código Civil cuando el Dr. Muñiz no es empleado del HAM.*

Por su parte, el 1 de diciembre de 2025, el Sr. Cotto de la Paz presentó su Oposición a *Certiorari*. Con el beneficio de la comparecencia de ambas partes, resolvemos.

**II.**

**A.**

Es norma reiterada que, el auto *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una determinación de un tribunal inferior. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020). Véase, también, Art. 670 del Código de Enjuiciamiento Civil, Ley Núm. 6 del 31 de marzo de 1933, 32 LPRA sec. 3491. La característica distintiva de recurso, se asienta en la discreción encomendada al tribunal revisor, para autorizar su expedición y adjudicar sus méritos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 209 (2023); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).

En aras de orientar la discreción judicial, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita aquellas circunstancias que permiten la intervención de este Tribunal de Apelaciones para atender ciertas determinaciones interlocutorias:

*El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No*

*obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.*

Nuestra autoridad se activa de mediar alguna de estas instancias. Ello, pues, la regla procesal aludida establece que ciertos dictámenes interlocutorios pueden: (1) afectar sustancialmente el resultado del pleito, o (2) tener efectos limitativos para la defensa o reclamación de una parte, o (3) conllevar cuestiones neurálgicas o de política pública que deben estar sujetos a revisión de forma inmediata. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 847-848 (2023) (citando a e R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 6.a ed., San Juan, Ed. LexisNexis, 2017, Sec. 5515a, págs. 533).

No obstante, una vez se adquiere jurisdicción en virtud de la Regla 52.1 de Procedimiento Civil, *supra*, la expedición del auto y su adjudicación en los méritos es discrecional. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 96 (2008). En armonía con lo anterior, la Regla 40 del Tribunal de Apelaciones, *In re* Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, a las págs. 62-63, 215 DPR __ (2025), delimita los siguientes criterios para ponderar la expedición del auto solicitado:

*A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.*

*B. Si la situación de hechos planteada es la más indicada para analizar el problema.*

*C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.*

*D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.*

*D. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*

*E. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*

*F. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*

Nótese que, la regla precitada facilita que la evaluación respecto a la expedición del recurso no transcurra en el vacío ni en ausencia de otros parámetros. *IG Builders et al. v. BBVAPR*, a la pág. 338; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011). Así pues, al examinar si procede la expedición del caso nos corresponde ser cuidadosos y conscientes de la naturaleza de la controversia ante nuestra consideración. *Torres González v. Zaragoza Meléndez, supra,* a la pág. 849. Por la naturaleza extraordinaria de este recurso, no debemos intervenir en las determinaciones de hechos del Tribunal de Primera Instancia, salvo que se pruebe que actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto. *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). Véase, además, *Dávila Nieves v. Meléndez* Marín, 187 DPR 750, 771 (2013).

**B.**

Según el Art. 1802 del Código Civil de 1930, 31 LPRA sec. 5141, para establecer responsabilidad bajo esta disposición era necesario que existiera un daño, una acción u omisión y la correspondiente relación causal entre el daño y la conducta culposa o negligente. La norma firmemente establecida en nuestra jurisdicción reza que, en toda causa de acción al amparo del Art. 1802, *supra,* el demandante debe establecer: (1) la existencia de una acción u omisión productora del acto ilícito extracontractual,

(2) la antijuridicidad de esta, (3) la culpa o negligencia del agente, (4) la producción de un daño y (5) la relación causal entre la acción u omisión y el daño. *Valle v. E.L.A.*, 157 DPR 1, 14 (2002).

En cuanto a la materia sustantiva de la prescripción, el Art. 1868 del Código Civil de 1930, 31 LPRA sec. 5298, impuso el término de un año para las obligaciones derivadas de la culpa o negligencia. Dicho plazo comenzaba a cursar desde el conocimiento del daño, la identidad del autor y los elementos necesarios para ejercitar la causa de acción. *García Pérez v. Corp. Serv. Mujer*, 174 DPR 138, 148 (2008). En el caso de la concurrencia de cocausantes del daño, se favoreció la postura de que estos responden solidariamente ante el perjudicado. *Íd.*, a la pág. 149.

Sobre ese aspecto, el Art. 1873 del Código Civil de Puerto Rico, dispuso que los métodos para interrumpir el término prescriptivo son: (1) por ejercicio ante los tribunales; (2) por reclamación extrajudicial por parte del acreedor y; (3) por cualquier acto de reconocimiento de la deuda por parte del deudor. 31 LPRA sec. 5303. El efecto de interrumpir el término prescriptivo es que el plazo de (1) año debe volver a computarse por entero desde el momento en que se produce el acto que interrumpe. *Hawayek v. A.F.F.*, 123 DPR 526, 530 (1989).

La normativa jurídica vigente en relación con la reclamación extrajudicial establece que esta puede manifestarse mediante diversos actos; ya fuera verbal o escrita, siempre que sea dentro del término prescriptivo. *Díaz Santiago v. International Textiles*, 195 DPR 862, 869 (2016); *Meléndez Guzmán v. Berríos López*, 178 DPR 1010 (2008). La misma debe ser una inequívoca, de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo. *Díaz Santiago v. International Textiles*, 195 DPR 862, 870 (2016). A su vez, toda reclamación extrajudicial debe cumplir

con los siguientes requisitos: "(1) debe ser oportuna; (2) debe presentarla una persona con legitimación; (3) el medio utilizado para hacer la reclamación debe ser idóneo, y (4) debe existir identidad entre el derecho reclamado y el afectado por la prescripción". *Íd.*

## C.

Ahora bien, en Puerto Rico, "las obligaciones pueden ser clasificadas de acuerdo con los sujetos que componen la relación". *Fraguada Bonilla v. Hosp. Aux. Mutuo,* 186 DPR 365 (2012). El Tribunal Supremo explicó que, la solidaridad es impropia o imperfecta "cuando es establecida mediante ley entre personas que no se conocen, que no son sino codeudores accidentales o cuando sus relaciones son esporádicas". *Pérez Hernández v. Lares Medical Center, Inc.*, 207 DPR 965, 981 (2021). Así pues, bajo la solidaridad impropia, "la persona perjudicada tendrá que interrumpir el término prescriptivo individualmente respecto a cada cocausante, pues la interrupción de la prescripción en la solidaridad imperfecta no aprovecha o perjudica por igual a todos los deudores." *Id.*, a la pág. 980.

En ese sentido, el Art. 1803 del Código Civil establece que, en cuanto a la responsabilidad que alude el Art. 1802, *supra*, responden también "los dueños y directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en que los tuvieran empleados o con ocasión de sus funciones". 31 LPRA sec. 5142. En nuestro ordenamiento jurídico la responsabilidad de los hospitales "ha estado predicada en la doctrina de responsabilidad vicaria". *Márquez Vega v. Martínez Rosado*, 116 DPR 397, 405 (1985).

En lo atinente a la controversia que nos ocupa, el Tribunal Supremo expresó lo siguiente:

*El régimen de responsabilidad presunta por hechos ajenos se fundamenta en la existencia de una relación de dependencia previa entre el patrono y su empleado donde el empleado, en el desempeño de su oficio, actúa para adelantar los intereses de su patrono. Es decir, **ambos cocausantes están inexorablemente atados por un interés común y tienen entre sí relaciones frecuentes**. No existe, por lo tanto, la ausencia de comunidad de intereses que justificó la adopción de la doctrina de solidaridad impropia en el ámbito extracontractual en Fraguada Bonilla v. Hosp. Aux. Mutuo, supra, según el Art. 1802, supra. Por el contrario, al interpretar conjuntamente los Arts. 1803 y 1804 del Código Civil, supra, la conclusión más lógica es que **la responsabilidad que surja entre el patrono y el empleado sea solidaria, más en su vertiente propia**. Veamos.*

*[...]*

*En esta ocasión, al resolver que los Arts. 1803 y 1804 del Código Civil, supra, establecen una **relación solidaria entre un patrono y su empleado**, esa **norma de solidaridad en realidad es una impuesta por ley**. Por consiguiente, también **rigen los efectos secundarios de la solidaridad propia** codificados en el Art. 1091, supra. Es decir, "**[l]a interrupción de la prescripción aprovecha o perjudica por igual a todos los acreedores y deudores**". [Art. 1874 Cód. Civ. 1930, 31 LPRA sec. 5304]. Pérez Hernández v. Lares Medical Center, Inc., supra,* a las págs. 989-990. (énfasis nuestro).

De ordinario, "los hospitales responden vicariamente por los médicos que son sus empleados". *Márquez Vega v. Martínez Rosado,* 116 DPR 397, 407 (1985). Inclusive, responden por los actos negligentes de los médicos que, aunque no fueran sus empleados, eran parte de su facultad y estaban disponibles para consultas de otros médicos. *Íd.* Además, por lo general, los hospitales responden por los concesionarios de franquicias exclusivas para prestar servicios en el hospital cuando estos cometen actos de impericia médica. *Sagardía de Jesús v. Hosp. Aux. Mutuo,* 177 DPR 484, 515 (2009). Asimismo, el Tribunal Supremo añade lo siguiente:

*[C]uando el paciente acude al hospital y es este el que le provee los médicos, hemos pautado que el hospital responderá solidariamente con el médico no empleado responsable del acto de impericia. Esto es así, en primer lugar, porque es el hospital el que provee el servicio del médico en particular, y el paciente*

*normalmente no decide o participa en su selección. [...] En segundo lugar, el paciente, a quien tiene de frente es al hospital y no a los médicos en particular. Así, pues, el médico que trabaja en el hospital es, ante el paciente, un aparente empleado del hospital o un auxiliar del mismo. En tercer lugar, es evidente que cuando un paciente acude al hospital a recibir un servicio, la relación principal que se crea es entre este y el paciente, ya que en este contexto, el hospital no es un lugar que alberga a muchos médicos individuales, sino que es un ente que se obliga a brindar un buen servicio al paciente que allí acude. Por último, este Tribunal ha sostenido que incluso **en casos en que estemos ante un contratista independiente, pero en una relación en la que el hospital "resulta principalmente beneficiado por la labor que realiza el médico", este deberá responder por los actos negligentes de aquel**. (Énfasis nuestro.) Id., págs. 513-514.*

*En suma, en el marco legal de la impericia médica, no alberga diferencia alguna que el doctor que atiende a un paciente sea un empleado del hospital, o uno a quien el hospital le haya concedido una franquicia para brindar servicios especializados, o un miembro de la facultad del hospital y a quien se acude para consultas.* Id., a la pág. 514.

### III.

De entrada, debemos mencionar que, de conformidad con los criterios establecidos en la Regla 52.1 del Reglamento del Tribunal de Apelaciones, *supra,* este foro apelativo intermedio se encuentra en posición de expedir el *auto.* Ante la discreción que poseemos para atender el asunto, procedemos a resolver la presente controversia.

En el recurso que nos ocupa el Dr. Muñiz Camacho señaló, en síntesis, que erró el TPI al determinar que el recurrido interrumpió el término prescriptivo en su contra. Más aún, al concluir que entre el peticionario y el Hospital Auxilio Mutuo opera la figura de solidaridad perfecta. Debido a que los señalamientos de error presentados por peticionario se encuentran íntimamente relacionados, procedemos a discutirlos conjuntamente.

Según la exposición de derecho que antecede, el término prescriptivo en las acciones bajo el antiguo Art. 1802, *supra,* es de (1) año desde que se tuvo conocimiento del daño, la identidad del

autor y los elementos necesarios para ejercitar su causa de acción. El término prescriptivo se puede interrumpir mediante una reclamación extrajudicial, la cual debe ser inequívoca, de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo. La misma debe ser oportuna, presentada por la persona con legitimación, mediante un medio idóneo y debe establecer la identidad entre el derecho reclamado y el afectado por la prescripción. Su efecto es que el plazo de un (1) año debe volver a computarse por entero desde el momento en que se produce el acto que interrumpe.

Como regla general, en materia civil extracontractual, opera una solidaridad impropia. Es decir, para interrumpir el término prescriptivo se deberá hacer de manera individual con respecto a cada cocausante. Contrariamente, en una solidaridad propia, la interrupción de la prescripción aprovecha o perjudica por igual a todos. Ello por razón de la relación o intereses en común que existe entre los cocausantes.

En el caso de los hospitales, opera una responsabilidad vicaria con relación a los actos que ejercen sus empleados, al amparo del Art. 1803, *supra*. En la medida en que el empleado actúa para adelantar los intereses del patrono, ambos se encuentran inexorablemente atados por una comunidad de intereses. Más aún, responden por los galenos que, a pesar de no ser sus empleados, forman parte de la facultad y están disponibles para hacer consultas a otros médicos. Incluso, por los concesionarios de franquicias exclusivas para prestar servicios en el hospital.

Además, cabe recordar que existe una responsabilidad vicaria cuando el paciente acude al hospital de primera instancia, y es este quien le provee los médicos que lo atenderán. Ello porque el paciente no participa en la selección del médico que lo atenderá, y ante su perspectiva, el médico aparenta ser un empleado de la

institución.

Entonces pues, corresponde que aquilatemos si es aplicable la doctrina de solidaridad perfecta a un facultativo médico con práctica privada, que prestó sus servicios en las clínicas externas del hospital. Superado este análisis, podremos determinar si se interrumpió el término prescriptivo contra el Dr. Muñiz Camacho.

Según las alegaciones del Sr. Cotto de la Paz, bajo la teoría cognoscitiva del daño, este advino en conocimiento de su diagnóstico de cáncer el 22 de octubre de 2015. A partir de esta fecha, envió unas cartas con la intención de interrumpir el término prescriptivo en (5) ocasiones distintas, a saber: el 14 de octubre de 2016[2], el 12 de octubre de 2017[3], el 10 de octubre de 2018[4], el 10 de octubre de 2019[5] y el 8 de octubre de 2020[6]. Ahora bien, las misivas se dirigieron a: el Hospital Auxilio Mutuo; el Dr. José A. Isado Zardón, Director Médico; el Lcdo. Carlos A. Santiago, Director Auxilio Plan de Socios; y el Dr. Armando Muñiz Camacho, Internista. La dirección que consta en los escritos es Ave. Ponce de León, Parada #37 ½, Hato Rey, Puerto Rico 00919.

Según la deposición del Dr. Muñiz Camacho, para la fecha de los hechos, mantenía una oficina privada ubicada en la Avenida Ponce de León.[7] Sin embargo, afirmó que mantenía un contrato parcial con el Hospital Auxilio Mutuo para laborar en las clínicas externas.[8] Detalló que, según el acuerdo, debía asistir en (2) ocasiones a las clínicas, a razón de (4) horas a la semana y debía atender un total de 12 pacientes.[9]

Por su parte, en la deposición del Sr. Cotto de la Paz, se

---

[2] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 87, Anejo 3.
[3] SUMAC TPI, a la Entrada Núm. 87, Anejo 4
[4] SUMAC TPI, a la Entrada Núm. 87, Anejo 5.
[5] SUMAC TPI, a la Entrada Núm. 87, Anejo 6
[6] SUMAC TPI, a la Entrada Núm. 87, Anejo 7
[7] *Íd.*, Anejo 8, a la pág. 8, líneas 4-10.
[8] *Íd.*, a la pág. 9, líneas 10-13.
[9] *Íd.*, línea 3; líneas 10-13.

desprende que este hizo la entrega de las cartas en las Clínicas de Plan de Socios del Hospital de Auxilio Mutuo.[10] También surge que este era el lugar en donde el recurrido recibía los servicios del referido facultativo médico.[11] El Sr. Cotto de la Paz razonó que al ser el lugar de trabajo del peticionario entraría en contacto con los documentos.[12] De lo contrario, le hubieran expresado que el galeno no trabajaba en las clínicas externas.[13] Aceptó que, al procurar por el Dr. Muñiz Camacho, le informaron que en ese momento no se encontraba en el lugar.[14] Ante la respuesta del personal médico, verbalizó que entregó la carta bajo el entendimiento de que estos se la harían llegar cuando el peticionario acudiera a las clínicas externas.[15]

Analizados los documentos presentados, la totalidad del expediente y derecho aplicable, debemos concluir que el TPI no erró en su determinación. A pesar de que el peticionario mantenía su practica privada, lo cierto es que las visitas médicas del recurrido se atendieron en las Clínicas del Plan de Socios del Hospital Auxilio Mutuo. Por lo que el recurrido estaba bajo la impresión de que el doctor laboraba en estas clínicas y que razonablemente pudiera haber entrado en contacto con los documentos que le fueron entregados en las clínicas externas.

Por otro lado, es forzoso concluir que, entre el Dr. Muñiz Camacho y el Hospital Auxilio Mutuo opera la figura de solidaridad propia o perfecta. Del propio testimonio del peticionario se estableció que este tenía un contrato parcial con la institución, en el cual prestaba sus servicios por una cantidad de horas a la semana. Es notable que entre estos existe un interés común, toda vez que el peticionario adelanta los intereses de la institución a

---

[10] SUMAC TPI, a la Entrada Núm. 87, Anejo 2, a la pág. 25, líneas 15-17.
[11] *Íd.*, líneas 5-7.
[12] *Íd.*, a la pág. 27, líneas 7-12.
[13] *Íd.*
[14] *Íd.*, a la pág. 27, líneas 17-19.
[15] *Íd.*, a la pág. 27, líneas 21-23.

través de su labor en las clínicas externas. De esta forma, opera entre las partes la responsabilidad vicaria, cuyo resultado hace atribuible los efectos de la solidaridad propia. No olvidemos que la figura de responsabilidad vicaria también aplica cuando el hospital le asigna el facultativo médico al paciente. Es decir, el recurrido no tuvo participación en decidir quién sería el responsable de atenderle. Como resultado, al interrumpir el termino prescriptivo en contra del Hospital Auxilio Mutuo, se interrumpió el término en contra del Dr. Muñiz Camacho.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte de esta Sentencia, confirmamos el dictamen recurrido. Se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de San Juan, para la continuación de los procedimientos conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones